HARRINGTON, FOXX, DUBROW & CANTER, LLP
DALE B. GOLDFARB, State Bar No. 65955
KEVIN R. WARREN, State Bar No. 242238
1055 West Seventh Street, 29th Floor
Los Angeles, California 90017-2547
Telephone (213) 489-3222
E-Mail    dgoldfarb@hfdclaw.com
          kwarren@hfdclaw.com

Attorneys for Defendant, CLARENDON
AMERICA INSURANCE COMPANY



FILED

MAY 2 2 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          ECL          DEPUTY

FILE BY FAX

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

LEGACY PARTNERS, INC, a Delaware
corporation,

        Plaintiff,

      v.

CLARENDON AMERICAN
INSURANCE COMPANY, and DOES 1
through 10,

        Defendants.

CASE NO.

The Hon. **'08 CV 0 9 2 0 BTM CAB**

Action Filed:   December 7, 2007

**NOTICE OF REMOVAL OF CIVIL
ACTION TO UNITED STATES
DISTRICT COURT; DEMAND FOR
JURY TRIAL**

[28 U.S.C. §1446; 28 U.S.C. §1441(b)]

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

    **PLEASE TAKE NOTICE** that defendant CLARENDON AMERICA

INSURANCE COMPANY hereby removes the above-entitled civil action from the

Superior Court of the State of California for the County of San Diego, to the United

States District Court for the Southern District of California, San Diego Division,

pursuant to the provisions of 28 U.S.C. §1446, and on the basis of diversity of

citizenship pursuant to 28 U.S.C. §1441(b) as follows:

    1.    Defendants received notice of the Complaint on or about April 25,

2008.

**ORIGINAL**

2.    Plaintiff, Legacy Partners, Inc., is a corporation in the State of Delaware, with its principal place of business in Foster City, California.

3.    Defendant Clarendon America Insurance Company was, at the time of the filing of this action and still is, a corporation in the State of New Jersey with its principal place of business in the State of New York.

4.    The District Court of the United States, Southern District of California, San Diego Division, has original jurisdiction under 28 U.S.C. § 1332 and the aforesaid action is one that may be removed to this Court by defendant pursuant to 28 U.S.C. § 1441.

5.    This action is being removed pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00 because plaintiff seeks monetary damages in the amount of $850,000.00, plus additional damages including punitive damages.

6.    The grounds for said removal are that there is complete diversity of citizenship between plaintiff, on the one hand, and defendant, on the other hand, such that removal is proper pursuant to 28 U.S.C. §1446(b). The defendant is not a resident of the State of California and its principal place of business is not in the State of California.

WHEREFORE, defendant files this Notice of Removal of this action from the aforementioned Superior Court, in which it is now pending, to the District Court of the United States for the southern District of California, San Diego Division, located in the United States Courthouse, 880 Front Street, San Diego, California. There is attached to this Notice, as Exhibit "A," true and correct copies of the Summons & Complaint for the case entitled *Legacy Partners, Inc. v. Clarendon America Insurance Company*, San Diego County Superior Court Case No. 37-2007-00082624-CU-IC-CTL.

/ / /

/ / /

HAKKINGTON, PUXX, DUBKOW & CANTER, LLP
1055 WEST SEVENTH STREET, 29th FLOOR
LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222

WHEREFORE, defendant prays that this action be removed from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California, San Diego Division.

DATED: May 22, 2008

HARRINGTON, FOXX, DUBROW & CANTER, LLP
DALE B. GOLDFARB
KEVIN R. WARREN

By: _____
KEVIN R. WARREN
Attorneys for Defendant, CLARENDON
AMERICA INSURANCE COMPANY

## DEMAND FOR JURY TRIAL

Defendant, Clarendon America Insurance Company demands a jury trial in the above-entitled action on all issues properly triable by a jury.

DATED: May 22, 2008

                HARRINGTON, FOXX, DUBROW & CANTER, LLP
                DALE B. GOLDFARB
                KEVIN R. WARREN

By:                                    
                KEVIN R. WARREN
                Attorneys for Defendant, CLARENDON
                AMERICA INSURANCE COMPANY

HARRINGTON, FOXX, DUBROW & CANTER, LLP
1055 WEST SEVENTH STREET, 29TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222

Exhibit A

**SUM-100**

@COPY

**SUMMONS**
**(CITACION JUDICIAL)**

(FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

2007 DEC -7 AM 10:15

SAN DIEGO COUNTY, CA

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
CLARENDON AMERICAN INSURANCE COMPANY, and DOES 1
through 10

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LEGACY PARTNERS, INC., a Delaware corporation

> You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
>
> There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.
>
> *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
>
> *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Diego Superior Court, Hall of Justice<br>330 West Broadway<br>San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br>37-2007-00082624-CU-IC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Susan Page White (SBN 137125), DICKSTEIN SHAPIRO, LLP
2049 Century Park East, Suite 700, Los Angeles, CA 90067 (310) 772-38300

| | | |
|---|---|---|
| DATE: DEC 0 7 2007<br>*(Fecha)* | Clerk, by _____ T. HART | , Deputy<br>*(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons. (POS-010)):*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.     www.USCourtForms.com

5

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>— Susan Page White (SBN 137125)<br>DICKSTEIN SHAPIRO, LLP<br>2049 Century Park East, Suite 700, Los Angeles, CA 90067<br><br>TELEPHONE NO.: (310) 772-8300    FAX NO.: (310) 772-8301<br>ATTORNEY FOR (Name): Plaintiff, Legacy Partners, Inc. | FOR COURT USE ONLY<br><br>2007 DEC -7 AM 10: 54<br><br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego.
STREET ADDRESS:
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME:

CASE NAME:
Legacy Partners, Inc. v. Clarendon American Insurance Company

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE: 37-2007-00082624-CU-IC-CTL<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☑ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action (specify): Five (5)
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015)

Date: December 6, 2007
SUSAN PAGE WHITE
(TYPE OR PRINT NAME)    ▶ _(signature)_    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br><br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

6

COPY

1 | Kirk A. Pasich (State Bar No. 94242)
Susan Page White (State Bar No. 137125)
2 | DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
3 | Los Angeles, CA 90067
Telephone: (310) 772-8300
4 | Facsimile: (310) 772-8301

5 | Attorneys for Plaintiff

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF SAN DIEGO

**BY FAX**

10 | 37-2007-00082624-CU-IC-CTL

11 | LEGACY PARTNERS, INC., a Delaware | CASE NO.:
12 | corporation,
| Plaintiff, | **COMPLAINT FOR BREACH OF**
13 | v. | **CONTRACT AND TORTIOUS BREACH**
**OF THE IMPLIED COVENANT OF GOOD**
14 | CLARENDON AMERICAN INSURANCE | **FAITH AND FAIR DEALING**
COMPANY, and DOES 1 through 10,
15 | | **DEMAND FOR JURY TRIAL**
| Defendants.
16

17

18 |     Plaintiff Legacy Partners, Inc. complains of defendants and alleges as follows:

19 | <u>NATURE OF THIS ACTION AND RELIEF SOUGHT</u>

20 |     1.    This is an action by Legacy Partners, Inc. against Clarendon America Insurance

21 | Company, its comprehensive general liability ("CGL") insurer. Legacy seeks to recover under its

22 | policy for Clarendon's wrongful refusal to defend and indemnify it in connection with a lawsuit that

23 | is covered by Clarendon's policy. Legacy also seeks to recover damages, including punitive

24 | damages, for Clarendon's tortious bad faith. The primary purpose for the policy was to provide

25 | protection for Legacy in the event that liability claims were made against it. The coverage afforded

26 | by this policy was understood and intended, among other benefits, to protect Legacy against these

27 | types of claims.

28

7

1        **THE PARTIES**

2          2.        Legacy is a Delaware Corporation.  Legacy is authorized to transact, and is

3    transacting business, in the State of California and the County of San Diego.

4          3.        Clarendon is a New Jersey Corporation.  Clarendon is authorized to transact, and is

5    transacting business, in the State of California and the County of San Diego.

6        **THE INSURANCE POLICY**

7          4.        To protect its interests, Legacy bought insurance from Clarendon.  Clarendon sold to

8    Legacy CGL Retained Amount Policy No. XSR 00410538, in effect from at least June 14, 2004, to

9    June 1, 2005 (the "policy").  The policy provides Legacy with $1,000,000 in coverage per

10   occurrence combined single limit, with a retained limit of $100,000 per occurrence.  The policy also

11   provides Legacy with $1,000,000 in personal injury coverage.  A true and correct copy of at least the

12   relevant parts of the policy is attached hereto as Exhibit A and incorporated herein by reference.

13         5.        Pursuant to the terms of the policy, Clarendon is obligated to pay that portion of the

14   Ultimate Net Loss, including damages, judgments, settlement and attorneys' fees and other defense

15   costs, incurred by Legacy arising from claims or suits.

16         6.        Clarendon's policy provides Legacy with the following coverage:

17              Subject to the other provisions of this policy, the Company will pay on behalf

18              of the **Insured** that portion of the **Ultimate Net Loss**, in excess of the **Retained**

19              **Amount**, which the **Insured** has become legally obligated to pay as damages

20              and related **Claims Expense** because of **Bodily Injury, Property Damage,**

21              **Personal Injury** or **Advertising Injury** to which this insurance applies.

22   Policy, § I, Insuring Agreement, ¶ 1.A.

23         7.        "Ultimate Net Loss" is defined in the policy as

24              all sums actually paid, or which the **Insured** is legally obligated to pay, as

25              damages and **Claims Expense** in satisfaction of claims or **Suits** for which

26              insurance is afforded under this policy, after deduction of all collectible

27              recoveries or salvage.

28   *Id.*, § V, Definitions, ¶ U.

DSMDB-2332628v06

8.    "Claims Expense" includes:

    1.    The cost of claims investigation;

    2.    The cost of litigation;

    3.    Interest as required by law on awards or judgments, or

    4.    Legal expenses which can be directly allocated to a specific claim.

*Id.*, § V, Definitions, ¶ E.

9.    "Property Damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." *Id.*, § V, Definitions, ¶ R.

10.    "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*, § V, Definitions, ¶ N.

11.    "Personal Injury" means "injury other than Bodily injury, arising out of one or more of the following offenses: . . . 3. Wrongful entry into, or eviction of a person from, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies with the permission of or on behalf of its owner, landlord or lessor." *Id.*, § V, Definitions, ¶ O.

12.    In regard to defense coverage, the policy states that the defense of claims or suits is the obligation of the insured. *Id.*, § I, Defense and Expense of Claims and Suits, ¶ 1. However, the policy provides that:

> The Company will have the right and opportunity, but neither the duty nor obligation, to associate with the Insured in the defense and control of any claim or **Suit** seeking damages in excess of the **Retained Amount**, arising out of any **Occurrence**, or which, in the Company's opinion, may create liability under this policy . . .

*Id.*, § I, Defense and Expense of Claims and Suits, ¶ 3.

13.    The defense costs incurred in connection with the *Wellington* lawsuit are covered by the policy, and do not come within any exception to, exclusion from, or endorsement limiting coverage under it. Furthermore, Clarendon is obligated to fund the settlement that Legacy has paid to Wellington. Clarendon has refused to honor its obligations under the policy in all respects.

DSMDB-2332628v06

14.    Legacy has complied with all terms and conditions precedent, to the extent not waived or otherwise excused, including payment of all premiums and providing timely notice of the *Wellington* lawsuit.  Legacy is entitled to the full benefits and protections provided by the policy. Legacy reasonably expected the policy to protect it in connection with the *Wellington* lawsuit and reasonably relied upon the policy for such protection.

### THE *WELLINGTON* LAWSUIT

15.    On or about October 28, 2004, Legacy was named as a defendant by the Wellington Group in *Wellington Group, LLC v. State of California Dept. of Transportation, et al.*, San Diego Superior Court, Case No. GIC 837898 (the "*Wellington* lawsuit").  In the *Wellington* lawsuit, Wellington alleged that Legacy was negligent, which resulted in property damage and personal injury, including (a) encroachment on property owned by Wellington without permission and without necessity; (b) failure to exercise reasonable care and skill in performing construction work on the Wellington property; (c) placement of heavy construction equipment and materials on the Wellington property; and (d) negligent removal of storm and pollution work that Wellington had completed as part of its development of the property.  On or about May 17, 2005, Wellington filed a First Amended Complaint and on or about August 15, 2005, Wellington filed a Second Amended Complaint.  A true and correct copy of the *Wellington* Second Amended Complaint is attached hereto as Exhibit B and incorporated herein by reference (the "Complaint").

16.    Pursuant to the Complaint, Wellington sought damages and attorneys' fees and costs against Legacy for, among other things, alleged nuisance, negligence, and trespass.  Wellington alleged that Legacy trespassed onto its property without permission and without necessity to make repairs to a retaining wall that was contiguous to the Wellington property.  *Id.*, ¶ 37.  Wellington alleged that as part of this trespass, Legacy "failed to exercise reasonable care and skill in undertaking to perform services, including, but not limited to constructing, repairing, designing, inspecting, hiring, consulting, monitoring, cleaning up, and recommending materials, services, and construction methods" in connection with the retaining walls.  *Id.*, ¶ 117.  Wellington also alleged that Legacy caused damage to the Wellington property by the placement of heavy construction

DSMDB-2332628v06

1    equipment, materials and vehicles onsite. *Id.* In addition, Wellington alleged that Legacy removed

2    storm and pollution work that Wellington had completed, resulting in property damage. *Id.*

3              17.    In addition, in Wellington's responses to Legacy's First Set of Special Interrogatories,

4    No. 28, Wellington reiterates its negligence claims against Legacy as follows:

5              First, Legacy failed to analyze the appropriate repairs for the retaining wall,

6              failed to investigate the ancient landslide issue, which would have revealed that

7              one did not exist, and negligently failed to diagnose actual problems with the

8              retaining wall, which necessitate repairs. Second, Legacy negligently designed

9              and determined the subterranean tie-back construction using Wellington's

10            property in the construction of the retaining walls without regard to alternative

11            less restrictive designs. Third, Legacy negligently and carelessly removed

12            much of the storm and pollution work which Wellington had completed as part

13            of the pre-development phase, causing erosion and other damage to its property.

14            Fourth, Legacy mis-diagnosed the repairs and construction of the retaining

15            walls by using Wellington's property when all such repairs could be

16            accomplished on Legacy's own property. Fifth, Legacy failed to perform the

17            requisite due diligence and inspection prior to initiating repairs, construction,

18            and design plans. If Legacy had done so, it would have determined that repairs

19            and construction of retaining walls is unnecessary given the fact that there is no

20            slope instability, an appropriate factor of safety, and no ancient landslide.

21   Wellington's Responses to Legacy's First Set of Special Interrogatories, Response No. 28.

22            18.    Thus, in the *Wellington* lawsuit, Wellington alleged, among other things, that Legacy

23   caused property damage to the Wellington property and or personal injury. *Id.*, ¶¶ 37, 38, 42, 117 -

24   119. Therefore, the *Wellington* lawsuit contained numerous allegations against Legacy that

25   constitute an "occurrence" and/or and "offense" as defined under the policy.

26            19.    On July 9, 2005, Legacy timely notified Clarendon of the *Wellington* lawsuit and

27   requested that Clarendon defend it.

28

DSMDB-2332628v06

1    **CLARENDON'S BREACHES IN CONNECTION WITH THE *WELLINGTON* LAWSUIT**

2    20.    On August 31, 2005, Legacy's insurance broker spoke with Clarendon's

3    representative regarding Clarendon's defense obligation. In an August 31, 2005 letter from Legacy

4    to Clarendon confirming this conversation, Legacy confirmed that it is Clarendon's "intent to accept

5    the tender of defense of this matter subject to a reservation of rights." Moreover, the letter

6    confirmed that Clarendon's representative had advised that the reservation of rights would be issued

7    sometime in the next week. The letter also noted that Clarendon consented to the Stoel Rives law

8    firm to continue their representation of Legacy in the *Wellington* lawsuit.

9    21.    In a September 16, 2005, letter from Legacy to Clarendon, it further confirmed that

10   Clarendon had acknowledged coverage. As a result, in good faith and in reliance that Clarendon had

11   agreed to accept the tender of defense costs, Legacy forwarded to Clarendon attorney-client

12   privileged billing invoices from defense counsel. Legacy also kept Clarendon apprised of upcoming

13   mediations with Wellington. For instance, in letters dated, September 8 and 22, 2005, Legacy

14   advised Clarendon of scheduled mediations.

15   22.    Then, six weeks after agreeing to accept the defense in connection with the

16   *Wellington* lawsuit, in an October 19, 2005 letter, Clarendon reversed its coverage determination and

17   disavowed coverage to Legacy. Clarendon's basis for denying coverage to Legacy for the

18   *Wellington* lawsuit was the erroneous assertion that the underlying allegations did not constitute an

19   "occurrence" as defined in the policy. In particular, Clarendon stated that intentional conduct

20   resulting in unforeseen consequences was not an "accident" and was not covered under the policy.

21   23.    Legacy responded to this belated and erroneous denial of coverage in an October 31,

22   2005, letter from its counsel. Legacy advised that Clarendon had no basis for reversing its previous

23   coverage position. Legacy explained that it had relied on Clarendon's previous acceptance of tender

24   of defense costs by sending privileged defense counsel invoices to Clarendon for payment. As such,

25   Clarendon had waived or was estopped from asserting that it had no duty to defend. In addition,

26   Legacy advised Clarendon how the allegations in the *Wellington* lawsuit constituted an

27   "occurrence."

28

DSMDB-2332628v06

24.   Even though Clarendon's belated reversal of its coverage position was a breach of its duty of good faith and fair dealing to its insured, Legacy continued to keep Clarendon advised of the *Wellington* lawsuit. For example, in a November 11, 2005, letter from Legacy's counsel to Clarendon, Legacy notified Clarendon of an upcoming mediation and advised that it would seek to negotiate a reasonable settlement with Wellington. Legacy also sought a response to its previous letter in which it had requested that Clarendon reevaluate its stance regarding coverage.

25.   However, Clarendon refused to reevaluate its wrongful denial of coverage. In a November 22, 2005, letter, Clarendon simply reiterated its denial of coverage.

26.   In a February 21, 2006, letter, Legacy advised Clarendon that it intended to extend on offer of compromise, pursuant to California Code of Civil Procedure section 998 to Wellington.

27.   On September 19, 2007, Legacy renewed its request that Clarendon reverse its denial of coverage and agree to reimburse Legacy for its defense fees and costs and for the settlement of the *Wellington* lawsuit. However, in a September 25, 2007, letter, Clarendon refused.

28.   Clarendon has breached its defense and indemnity duties and has continued to ignore the duties imposed by contract, by law, and by insurance industry custom and practice. Indeed, Clarendon has refused to pay even a single penny of the approximately $500,000 in defense fees and costs incurred by and owing to Legacy. Furthermore, Clarendon has refused to indemnify Legacy for the $350,000 settlement it paid to Wellington. Instead, Clarendon continues to allow Legacy to suffer the brunt of these fees and costs and the settlement payment, which has resulted in substantial prejudice to Legacy.

## FIRST CAUSE OF ACTION

### (Breach of Contract Regarding the Duty To Pay Defense Costs Against Clarendon)

29.   Legacy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 28 above.

30.   Clarendon owes, and continues to owe, Legacy a defense duty, which includes reimbursing Legacy for the defense fees and costs incurred, for the *Wellington* lawsuit *if any part of the lawsuit is potentially covered*. Clarendon's defense duty was owed immediately. Clarendon's commitment to pay defense costs to Legacy was a significant right afforded to it under the policy.

7
COMPLAINT
*13*

DSMDB-2332628v06

1    Clarendon wrongfully breached this is a commitment when it reversed its initial tender of defense

2    costs and then later denied coverage, forcing Legacy to incur substantial attorneys' fees and costs to

3    fund its own defense, which fees and costs total approximately $500,000.

4         31.     Clarendon had a duty under the policy, the law, and insurance industry custom and

5    practice to pay defense costs when there is *any* potential for coverage.  Clarendon breached its duties

6    under the policy by, among other things, (a) failing and refusing to pay the defense costs of Legacy

7    in connection with the *Wellington* lawsuit; (b) asserting grounds for denying coverage that it knows

8    are not supported by, and in fact are contrary to, the terms of the policy, the law, insurance industry

9    custom and practice, and the facts; (c) failing to fully inquire into possible bases that might support

10    coverage for the *Wellington* lawsuits; (d) failing to honor its promises and representations in its

11    policy that it would pay defense fees and costs to its insureds in suits alleging "property damage"

12    and (e) by giving greater consideration to its own interests than it gave to the interests of Legacy.

13         32.     As a direct and proximate result of Clarendon's acts, Legacy has been damaged in an

14    amount of approximately $500,000, plus interest.

## SECOND CAUSE OF ACTION

### (Breach of Contract Regarding the Duty to Indemnify Settlement Against Clarendon)

17         33.     Legacy realleges and incorporates by reference the allegations contained in

18    paragraphs 1 through 32 above.

19         34.     Clarendon has a duty to pay in full all sums that Legacy became obligated to pay for

20    the settlement of the *Wellington* lawsuit.  Clarendon's duty to indemnify includes the duty to pay for

21    all portions of the settlement of the *Wellington* lawsuit.

22         35.     Clarendon has breached its duties under its policy by refusing and failing to

23    indemnify Legacy for the settlement of the *Wellington* lawsuit and by denying coverage to Legacy

24    based upon positions that Clarendon knows are not supported by, and in fact are contrary to, the

25    terms of their policy, the law, insurance industry custom and practice, the reasonable expectations of

26    Legacy, and the facts, and by otherwise acting as alleged above.

27         36.     As a direct and proximate result of Clarendon's breaches of contract, Legacy has been

28    damaged in an amount in excess of $350,000, plus interest.

DSMDB-2332628v06

## THIRD CAUSE OF ACTION

### (Tortious Breach of the Implied Covenant of Good Faith

### and Fair Dealing Against Clarendon)

37.    Legacy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 36 above.

38.    Implied in the policy sold by Clarendon were covenants that Clarendon would act in good faith and deal fairly with its insured, that Clarendon would do nothing to interfere with Legacy's rights to receive the benefits of the policy, and that Clarendon would give at least the same level of consideration to its insured's interests as it gives to its own interests. Instead of complying with these duties, Clarendon acted in bad faith by:

    (a)    Wrongfully and unreasonably refusing to defend and/or reimburse Legacy for the attorneys' fees and costs that it incurred in the defense of the *Wellington* lawsuit, which are approximately $500,000, without any basis in fact or law to do so, despite the fact that Clarendon originally had agreed to pay defense costs;

    (b)    Wrongfully refusing to indemnify Legacy for the amount it paid in settlement of the *Wellington* lawsuit;

    (c)    Wrongfully and unreasonably asserting grounds for denying coverage that Clarendon knows are not supported by, and in fact are contrary to, the terms of the policy, the law, insurance industry custom and practice, and the facts;

    (d)    Giving greater consideration to its own interests than it gave to Legacy's interests; and

    (e)    Otherwise acting as alleged above.

39.    In breach of the implied covenant of good faith and fair dealing, Clarendon did the things and committed the acts alleged above for the purpose of consciously withholding from Legacy the rights and benefits to which it is entitled under the policy. Clarendon's acts are inconsistent with Legacy's reasonable expectations, are contrary to established claims practices and legal requirements, are contrary to the express terms of Clarendon's policy, and constitute bad faith.

DSMDB:2332628v06

40.    Clarendon's conduct is reprehensible and has been done with a conscious disregard of Legacy's rights, constituting oppression, fraud, and/or malice, in that Clarendon engaged in a series of acts designed to deny the benefits due under its policy. Specifically, Clarendon, by acting as alleged above, in light of information, facts, and relevant law to the contrary, consciously disregarded Legacy's rights and forced it to incur substantial and oppressive financial losses, without any assistance from Clarendon, thereby inflicting substantial financial damage on Legacy. Clarendon ignored the interests and concerns of Legacy, with the requisite intent to injure within the meaning of California Civil Code section 3294. Therefore, Legacy is entitled to recover punitive damages from Clarendon in an amount that is sufficient to punish and make an example of Clarendon and in order to deter similar conduct in the future.

41.    Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Legacy is entitled to recover all attorneys' fees that it has reasonably incurred, and continues to incur, in its efforts to obtain the benefits of insurance that have been, and continue to be, wrongfully and in bad faith withheld by Clarendon. When the precise amount of these fees is known, Legacy will seek leave of court to amend this complaint.

42.    As a direct and proximate result of Clarendon's acts, Legacy has been damaged in an amount in excess of the Court's jurisdictional limits. The actual amount of damages has not been precisely ascertained yet, but includes the fees and expenses that Legacy incurred in its defense and settlement of the *Wellington* lawsuit, which are approximately $850,000, plus interest, and other damages not yet known or determined.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief Against Clarendon)

43.    Legacy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 42 above.

44.    Legacy is informed and believes, and on that basis alleges, that Clarendon disputes that Legacy is entitled to insurance coverage for the *Wellington* lawsuit. Therefore, an actual and justiciable controversy exists between Legacy and Clarendon concerning the matters alleged herein.

DSMDB-2332628v06

45.    Legacy therefore seeks a judicial declaration as to the duties of Clarendon, including the defense duty to Legacy under the insurance policy, confirming that Legacy's contentions, as stated above, are correct. A declaration is necessary at this time in order that the parties' dispute may be resolved and that they may be aware of their respective rights and duties.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief Against Does 1 through 10)

46.    Legacy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 45 above.

47.    Legacy is informed and believes, and on that basis alleges, that Does 1 through 10 dispute that Legacy is entitled to insurance coverage for the *Wellington* lawsuit. Therefore, an actual and justiciable controversy exists between Legacy, on the one hand, and Does 1 through 10, on the other hand, concerning the matters alleged herein.

48.    Legacy therefore seeks a judicial declaration as to the duties of Does 1 through 10, including the duty to defend and indemnify Legacy under the Policy, confirming that Legacy's contentions, as stated above, are correct. A declaration is necessary at this time in order that the parties' dispute may be resolved and that they may be aware of their respective rights and duties.

## PRAYER FOR RELIEF

WHEREFORE, Legacy prays for judgment as follows:

1.    On the First Cause of Action, for damages, plus interest, according to proof at the time of trial, but at least $500,000;

2.    On the Second Cause of Action, for damages, plus interest, according to proof at the time of trial, but at least $350,000;

3.    On the Third Cause of Action:

   a.    For damages, plus interest, according to proof at the time of trial;

   b.    For reasonable attorneys' fees and expenses incurred in obtaining the benefits due under the policy, plus interest;

   c.    For punitive damages in an amount to be determined at the time of trial;

DSMDB-2332628v06

1    4.    On the Fourth Cause of Action, for a declaration in accord with Legacy's contentions

2    stated above;

3    5.    On the Fifth Cause of Action, for a declaration in accord with Legacy's contentions

4    stated above;

5    6.    On all causes of action:

6         a.    For costs of suit incurred herein;

7         b.    Interest; and

8         c.    For such other, further, and/or different relief as may be just and proper.

9

10    Dated:  December 5 2007                    DICKSTEIN SHAPIRO LLP

11

12                                               BY:

13                                                    Susan Page White
                                                      Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DSMDB-2332628v06

*18*

## DEMAND FOR JURY TRIAL

Legacy hereby demands trial by jury.

Dated:  December 5 2007

DICKSTEIN SHAPIRO LLP

BY: _____
Susan Page White
Attorneys for Plaintiff

# *clarendon* **america**

Policy No.:    XSR00410538
Previous Policy No.:

**ISSUED BY:**
Clarendon America Insurance Company
**Administrative Offices:** New York, NY

**NAMED INSURED AND ADDRESS:**
Legacy Partners, Inc.
4000 East Third Avenue, Suite 600
Foster City, California   94404

**PRODUCER:**
Crump E & S of San Francisco
160 Spear Street, 16th Floor
San Francisco, California   94105

## DECLARATIONS:  Retained Amount Policy

**POLICY PERIOD:**    From:        6/14/2004    to:    6/1/2005
At 12:01 a.m. Standard Time at your mailing address shown above

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This premium may be subject to adjustment.

This Declarations Page is issued in conjunction with and forms a part of the policy form.

**LIMITS OF INSURANCE:**

| | |
|---|---|
| General Aggregate, Per Location, Per Project Limit: | $2,000,000 |
| Products/Completed Operations Aggregate Limit: | $2,000,000 |
| Each Occurrence Combined Single Limit: | $1,000,000 |
| Personal & Advertising Injury Limit: | $1,000,000 |
| Employee Benefits Liability Per Employee and Aggregate Limit: | $1,000,000 |
| (Part of General Aggregate) | |
| Fire Damage Legal – Any One Fire Limit: (part of General Aggregate): | $50,000 |

**RETAINED AMOUNT:**

| | |
|---|---|
| Each and Every Occurrence for all Occurrences except Subsidence: | $100,000 |
| Each and Every Occurrence for all Occurrences or Claims for Subsidence: | $1,000,000 |

**SELF-INSURED CLAIMS SERVICING ORGANIZATION:**

| | | |
|---|---|---|
| VeriClaim | Contact Person: | Arelisa Williams |
| 233 South Wacker Drive | Telephone: | 312-559-4817 |
| Suite 2420 | Fax: | 312-454-1588 |
| Chicago, Illinois  60606 | E-Mail Address: | awilliams@vericlaiminc.com |

Basis of Premium: Please Refer to Adjustable Premium Endorsement

**Annual Advance Premium and Minimum**
**$318,120**

**Policywriting Minimum Premium**
**$79,530**

**FORMS APPLICABLE TO THIS POLICY:**  Please refer to Forms and Endorsements Attached to this Policy

Issue Date:  8/20/2004

# RETAINED AMOUNT POLICY

PROVIDED BY CLARENDON AMERICA INSURANCE COMPANY
AS DESIGNATED ON THE DECLARATIONS PAGE

Administrative Offices: 7 Times Square, New York, NY 10036

21

# RETAINED AMOUNT POLICY

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Words and phrases that appear in **boldface** (except for titles or captions) have special meaning. Refer to SECTION III - RETAINED AMOUNT, SECTION IV - WHO IS AN INSURED, and SECTION V - DEFINITIONS.

This policy provides coverage, which is different, than coverage provided by most other policies.  The coverage provided by this policy is not subject to the terms or conditions of any other insurance.  Only the provisions of this policy determine the scope of coverage.

This policy applies excess of a **Retained Amount**.  The **Retained Amount** is the responsibility of the **Insured** and is to be paid from the **Insured's** own account.

This policy provides for the payment of defense expenses only when such expenses, in combination with associated damages, exceed the **Retained Amount**. The Company may associate with the **Insured**, but is not obligated to provide defense of any claim or **Suit**.  The Limits of Insurance available to pay damages will not be reduced by amounts paid for **Claims Expense**.  **Claims Expenses** that are incurred by the **Insured** shall be applied against the **Retained Amount**.

In return for the payment of the premium stated in the Declarations and in reliance upon the statements in the Declarations and the application and any supplementary information pertaining thereto, which form a part of this policy, and subject to all the terms of this policy, Clarendon America Insurance Company or its affiliate (hereafter called the Company) agrees with the **Named Insured** to provide the insurance as stated in this policy.

22

## TABLE OF CONTENTS

Section I    - Coverage ........................................................................................ 1

Section II   - Limits of Insurance  ..................................................................... 8

Section III  - Retained Amount ........................................................................ 9

Section IV - Who Is An Insured  ...................................................................... 9

Section V   - Definitions .................................................................................. 11

Section VI - Claims Servicing and Funding of Retained Amounts ................. 15

Section VII - Conditions .................................................................................. 16

## SECTION I - COVERAGE

A.    **INSURING AGREEMENT**

    1.    Subject to the other provisions of this policy, the Company will pay on behalf of the **Insured** that portion of the **Ultimate Net Loss**, in excess of the **Retained Amount**, which the **Insured** has become legally obligated to pay as damages and related **Claims Expense** because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies.

    2.    The amount the Company will pay is limited as described in SECTION II - LIMITS OF INSURANCE and SECTION III - RETAINED AMOUNT.

    3.    This insurance applies only to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that is caused by an **Occurrence** which takes place in the **Coverage Territory** and during the Policy Period shown in the Declarations.

    4.    This insurance applies to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** only if prior to the policy period, no **Insured** listed under Paragraph A. of SECTION IV – WHO IS AN INSURED and no employee authorized by an **Insured** to give or receive notice of an **Occurrence** or claim, knew that the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** had occurred, in whole or in part. If such a listed **Insured** or authorized employee knew, prior to the policy period, that the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** occurred, then any continuation, change or resumption of such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** during or after the policy period will be deemed to have been known prior to the policy period.

    5.    **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any **Insured** listed under Paragraph A. of SECTION IV – WHO IS AN INSURED or any employee authorized by an **Insured** to give or receive notice of an **Occurrence** or claim, includes any continuation, change or resumption of that **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** after the end of the policy period.

    6.    **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** will be deemed to have been known to have occurred at the earliest time when any **Insured** listed under Paragraph A. of SECTION IV – WHO IS AN INSURED or any employee authorized by an **Insured** to give or receive notice of an **Occurrence** or claim:

        a.    Reports all, or any part, of the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to the Company or any other insurer;

        b.    Receives a written or verbal demand or claim for damages because of the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury**; or

        c.    Becomes aware by any other means that **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** has occurred or has begun to occur.

B.    **DEFENSE AND EXPENSE OF CLAIMS AND SUITS**

    1.    The defense of claims or **Suits** to which this policy applies is the obligation of the **Insured**.

    2.    The **Insured** shall pay **Claims Expense** within the **Retained Amount**, which relates to the defense of claims or **Suits**.

    3.    The Company will have the right and opportunity, but neither the duty nor obligation, to associate with the **Insured** in the defense and control of any claim or **Suit** seeking damages in excess of the **Retained Amount**, arising out of any **Occurrence**, or which, in the Company's opinion, may create liability under this policy; and in such event:

a. The Insured and Company shall cooperate fully; and

b. No Claims Expense shall be incurred on behalf of the Company without the written consent of the Company, and notwithstanding such consent, all such Claims Expense shall be reasonable.

c. No Insured will enter into any settlement that may impact this policy, agree to a judgment or consent judgment against it or assign rights under this policy to anyone unless the Company first consents in writing.

4. Provided the Company consents in writing to a settlement made, a judgment satisfied or the payment of Claims Expense associated with a claim or Suit which exceeds the Retained Amount, the Company will pay that portion of the reasonable Claims Expense which is in excess of the Claims Expense within the Retained Amount, however,:

a. The Company is not obligated to defend any Suit or investigate any claim after it has paid the total applicable Limit of Insurance, as specified in SECTION II, and

b. If the Company recommends a settlement to the Insured, which is acceptable to a claimant and the Insured does not agree to such settlement, then:

1) The Limit of Insurance (as specified in SECTION II) shall be reduced to an amount equal to the amount for which the claim or Suit could have been settled. This Limit of Insurance shall be in excess of the Retained Amount and,

2) The Company will not pay for, nor will the amount of any Retained Amount include, any prejudgment interest based upon that period of time after such recommendation is made.

5. Payment of any Claims Expense by the Company does not reduce the Limits of Insurance provided by this policy.

## C. EXCLUSIONS

This insurance does not apply to:

1. **Advertising Injury**

   **Advertising Injury** arising out of:

   a. Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   b. The failure of goods, products or services to conform with advertised quality or performance;

   c. The wrong description of the price of goods, products or services; or

   d. An offense committed by an Insured whose business is advertising, broadcasting, publishing or telecasting.

2. **Advertising Injury or Personal Injury**

   **Advertising Injury** or **Personal Injury** arising out of:

   a. Any oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity;

   b. Any oral or written publication of material whose first publication took place before the beginning of the Policy Period;

25

c.   Any willful violation of a penal statute or ordinance committed by or with the consent of the **Insured**; or

d.   For which the **Insured** has assumed liability in a contract or agreement. However, this sub-paragraph d. does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

3.   **Aircraft**

Any liability arising out of the ownership, maintenance, operation, use, entrustment to others, or **Loading or Unloading** of any aircraft.

4.   **Asbestos**

Any liability caused by, resulting from or arising out of, or in any way related to asbestos, including, but not limited to:

a.   The manufacture, sale, distribution, handling, use, installation, removal, transportation of asbestos or disposal of asbestos from any good, products, materials, buildings, or structures;

b.   Any damages, costs, or expenses arising out of any request, demand, or order issued or made pursuant to any statutes or governmental regulations that any **Insured** or others test for, monitor, clean up, remove, contain, treat, neutralize, or in any way respond to, or assess the effects of asbestos;

c.   Any supervision, instructions, recommendations, notices, warnings or advice given or which should have been given in connection with asbestos; or

d.   Any claim, action, judgment, liability, settlement, defense, or expense in any way arising out of asbestos whether such results directly or indirectly from the **Insured's** activities.

As used in this exclusion, the term "asbestos" includes, but is not limited to, asbestos, asbestos products, asbestos fibers, asbestos dust, and asbestos contained in products, goods, materials, buildings, or structures.

5.   **Contractual Liability**

**Bodily Injury**, or **Property Damage**, or **Personal Injury** for which the **Insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

a.   Assumed in a contract or agreement that is an **Insured Contract** provided the **Bodily Injury** or **Property Damage** occurs subsequent to the execution of the contract or agreement; or

b.   That the **Insured** would have in the absence of the contract or agreement.

6.   **Damage to Impaired Property**

**Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

a.   A defect, deficiency, inadequate, or dangerous condition in the **Named Insured's Product** or **Named Insured's Work**; or

b.   A delay or failure by the **Named Insured** or anyone acting on the **Named Insured's** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to the **Named Insured's Product** or the **Named Insured's Work** after it has been put to its intended use.

26

7.   **Damage to the Named Insured's Product**

Property Damage to the Named Insured's Product arising out of the product itself or any part of it.

8.   **Damage to the Named Insured's Work**

Property Damage to the Named Insured's Work arising out of the work itself or any part of it and included within the Products-Completed Operations Hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the Named Insured's behalf by a subcontractor.

9.   **Damage to Property**

a.   Property the Named Insured owns, rents or occupies;

b.   Premises the Named Insured sells, gives away or abandons, if the **Property Damage** arises out of any part of these premises;

c.   Property loaned to the Named Insured;

d.   Property in the care, custody or control of the Named Insured or over which the Named Insured is for any purpose exercising physical control;

e.   That particular part of real property on which the **Named Insured** or any contractors or subcontractors working directly or indirectly on behalf of the **Named Insured** are performing operations, if the **Property Damage** arises out of those operations; or

f.   That particular part of any property that must be restored, repaired or replaced because the **Named Insured's Work** was incorrectly performed on it.

Paragraph (b) of this exclusion does not apply if the premises are the **Named Insured's Work** and were never occupied, rented or held for rental by the **Named Insured**.

Paragraphs (c), (d), (e), and (f) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (f) of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard**.

10.   **Employee Compensation**

Any award or settlement of back salary or wages or any other employee compensation.

11.   **Employer's Liability**

Any liability:

a.   Arising out of any injury to any officer, employee or volunteer worker of any **Insured** in the course of his or her employment by or for any **Insured**;

b.   Arising out of any injury sustained by the spouse, child, parent, brother or sister of any officer, employee or volunteer worker of any **Insured** as a result of (a) above; or

c.   To any fellow employee of the **Insured** arising out of and in the course of the fellow employee's employment.

This exclusion applies whether any **Insured** may be held liable as an employer or in any other capacity and to any other obligation to share damages with or to repay someone else who must pay damages because of such injury.

Parts a. and b. of this exclusion do not apply to liability assumed by the **Insured** under an **Insured Contract**.

12. **E.R.I.S.A.**

    Any liability:

    a.  Imposed upon or imputed to the **Insured** under the "Employee Retirement Income Security Act of 1974" as now or hereafter amended; or

    b.  Arising out of the **Insured's** capacity as a fiduciary of any employee benefit plan or any self-insurance fund.

13. **Expected or Intended Injury**

    **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

14. **Lead**

    a.  Any claim resulting from exposure to lead or to any product containing lead;

    b.  **Property Damage** resulting from the existence, handling, processing, installing, removing, disposal, sale or distribution of lead or any property containing lead;

    c.  Any loss, cost or expense arising out of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing lead or any product containing lead, whether done pursuant to government directive or request or for any other reason; or

    d.  Any loss, cost or expense arising out of the removal, replacement, repair, enclosure or encapsulation or lead or any substance containing lead from a building or structure.

15. **Liquor Liability**

    **Bodily Injury** or **Property Damage** for which any **Named Insured** may be held liable by reason of:

    a.  Causing of contributing to the intoxication of any person;

    b.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcoholic; or

    c.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

    This exclusion applies only if the **Named Insured** is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

16. **Medical Malpractice**

    Any liability arising out of:

    a.  The rendering of or failure to render:

        1)  Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

CRA 00001

4-04



5)  "Waste" means any material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content; and (2) resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under paragraph 1. or 2. thereof;

6)  "Nuclear facility" means:

   a)  Any "nuclear reactor",

   b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging waste,

   c)  Any equipment or device used for processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235, or

   d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste", and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

7)  "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

8)  For the purposes of this exclusion only, Property Damage includes all forms of radioactive contamination of property.

19.  **Pollution**

   a.  Any liability, which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants.

   b.  Any loss, cost or expense arising out of any demand, order, or request that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants.

   c.  Any loss, cost or expense arising out of any claim or Suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of Pollutants.

   Paragraph a. does not apply to any liability arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform and are being used to operate the normal electrical, hydraulic or mechanical functions necessary for the operation of an Automobile or Mobile Equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such Insured, contractor or subcontractor.

   This exclusion does not apply to any liability arising out of heat, smoke or fumes from a hostile fire. As used in this exclusion, a "hostile fire" means one, which becomes uncontrollable or breaks out from where it was intended to be.

29

Further paragraph a. of this exclusion does not apply to any liability arising out of the collision, upset, or overturn of an **Automobile** or **Mobile Equipment**.

20.  **Recall of Products, Work, or Impaired Property**

Damage claimed for any loss, cost or expense incurred by the **Named Insured** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the **Named Insured's Product**, the **Named Insured's Work** or **Impaired Property** if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

21.  **Uninsured Motorists**

Any obligation imposed by law under **Automobile** personal injury protection, no-fault, uninsured motorist, underinsured motorist or any similar law.

22.  **War**

Any liability for injury or damages, however caused, arising, directly or indirectly, out of:

a.   War, including undeclared or civil war; or

b.   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c.   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

23.  **Watercraft**

Any liability arising out of the ownership, use, operation, maintenance, entrustment to others, or **Loading or Unloading** of any watercraft owned or operated by or rented or loaned to any **Insured**.  This exclusion does not apply to:

a.   A watercraft while ashore on premises the **Named Insured** owns or rents; or

b.   A watercraft not owned by the **Named Insured** that is less than 75 feet long and not being used to carry persons or property for a charge.

24.  **Workers Compensation**

Any obligation of the **Insured** under any worker's compensation, disability benefits or unemployment compensation law or any similar law.

**SECTION II - LIMITS OF INSURANCE**

A.   The Limits of Insurance shown in the Declarations and described in this Section establish the most the Company will pay regardless of the number of **Insureds**, claims made or **Suits** brought, or persons or organizations making claims or bringing **Suits**.

B.   The General Aggregate Limit is the most the Company will pay for the sum of all damages, except for damages arising from injury or damage:

1.   Included in the **Products-Completed Operations Hazards**; or

2.   Included in the **Automobile Liability Hazard**.

30

C.   The Products-Completed Operations Aggregate Limit is the most the Company will pay for the sum of all damages arising from injury or damage included in the **Products-Completed Operations Hazard**.

D.   Subject to B. and C. above and regardless of the number of hazards that may be involved in any one **Occurrence**, the "Each Occurrence" limit shown in the Declarations is the most the Company will pay for the sum of all damages because of **Bodily Injury**, **Property Damage**, **Personal Injury** and **Advertising Injury** arising out of any one **Occurrence**.

## SECTION III - RETAINED AMOUNT

A.   The Limits of Insurance of this policy apply only in excess of the **Retained Amount**.

B.   The **Retained Amount** shall be applied to each **Occurrence** only against damages and **Claims Expense** for **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** for which coverage is afforded by this policy.

C.   The **Retained Amount** shall not include any amounts for damages or **Claims Expense** arising from an **Occurrence**, which takes place prior to or subsequent to the Policy Period.

## SECTION IV - WHO IS AN INSURED

A.   The Named Insured, and if the Named Insured is:

   a.   *An individual*, his or her spouse, but only with respect to the conduct of a business of which the Named Insured is a sole owner.

   b.   *A partnership or joint venture*, its members or partners and their spouses; but only with respect to the conduct of the business of the partnership or joint venture. However, with respect to an **Automobile** owned by or registered in the name of a member or partner, or a member of their household; such individuals are not **Insureds**.

   c.   *An organization other than a partnership or joint venture*, its executive officers and directors, but only with respect to their duties as such; and its stockholders, but only with respect to their liability as stockholders;

   d.   *A limited liability company*, its members, but only with respect to their duties as managers for the organization.

B.   Each of the following is also an **Insured**, except with respect to the ownership, maintenance, use, entrustment to others, **Loading or Unloading** of any **Automobile**:

   1.   Employees of the **Named Insured**, other than executive officers, (for organizations other than a partnership, joint venture or limited liability company) or managers (for limited liability companies), but only while acting within the scope of such employment. However, none of these employees is an **Insured** for:

      a.   **Bodily Injury** or **Personal Injury** to the Named Insured or to:

         1)   The **Insured's** partners or members (if the **Insured** is a partnership or joint venture);

         2)   The **Insured's** members (if the **Insured** is a limited liability company); or

         3)   A co-employee while in the course of his or her employment or while performing duties related to the conduct of the insured's business; or the spouse, child, parent, brother or sister of that co-employee as a consequence of such **Bodily Injury** or **Personal Injury**.

            Any obligation on the part of an employee to share damages with or repay someone else who must pay damages because of the injury cited in 3) above is also excluded from coverage;

31

      b.   Property Damage to property owned, occupied or used by, rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by the Insured, any of the Insured's employees, any partner or member (if the Insured is a partnership or joint venture), or any member (if the Insured is a limited liability company).

2.   Any person (other than an employee), or any organization while acting as a real estate manager for the Named Insured.

3.   Any person or organization having temporary custody of the Named Insured's property because of the death of a Named Insured, but only:

     a.   With respect to liability arising out of the maintenance or use of that property; and

     b.   Until a legal representative has been appointed.

4.   The legal representative of the Named Insured, in the case of death of a Named Insured, but only with respect to the representative's duties as such. That representative will have all of the rights and duties of the Named Insured under this policy.

C.  With respect to:

1.   Mobile Equipment legally registered to the Named Insured, any person is an Insured while driving such equipment along a public highway with the Named Insured's permission. Any other person or organization responsible for the conduct of such person is also an Insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an Insured with respect to:

     a.   Bodily Injury to a co-employee of the person driving the equipment; or

     b.   Property Damage to property owned by, rented to, in the charge of or occupied by the Named Insured or the employer of any person who is an Insured under this provision.

2.   The ownership, maintenance, use, entrustment to others, Loading or Unloading of Automobiles; anyone using the Automobile with permission of the Named Insured is also an Insured except:

     a.   A partner of the Named Insured or a member of the Named Insured if a joint venture, but only with respect to an Automobile owned by or registered in the name of such member or partner, or a member of his or her household.

     b.   The owner of an Automobile borrowed or hired from an employee of the Named Insured or a member of the employee's household.

     c.   Any individual working in a business that sells, repairs, service or parks Automobiles, unless that business is owned by the Named Insured.

D.  Any organization the Named Insured newly acquires or forms (other than a partnership or joint venture) over which the Named Insured maintains ownership or majority interest is an Insured if there is no other similar insurance available to that organization. However, coverage will be afforded only until:

1.   The 90th day after the Named Insured acquires or forms the organization; or

2.   The end of the Policy Period, whichever is earlier.

   Coverage does not apply to Bodily Injury, Property Damage or Personal Injury claims or Suits that arise from events or offenses occurring prior to the time the Named Insured acquired or formed the organization.

E.  No person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations:



## SECTION V - DEFINITIONS

A.  **Advertising Injury** means injury arising out of one or more of the following offenses:

1.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.  Oral or written publication of material that violates a person's right of privacy;

3.  Misappropriation of advertising ideas or style of doing business; or

4.  Infringement of copyright, title or slogan.

B.  **Automobile** means a land motor vehicle, trailer or semi-trailer including any attached machinery or equipment, designed for use primarily on public roads, but **Automobile** does not include **Mobile Equipment.**

C.  **Automobile Liability Hazard** includes all **Bodily Injury** and **Property Damage** arising out of the ownership, maintenance, use, entrustment to others, **Loading or Unloading** of an **Automobile** by the **Insured**, but does not include **Bodily Injury** or **Property Damage** arising out of the operation of any of the equipment listed in paragraph 6.b. and 6.c. of the definition of **Mobile Equipment.**

D.  **Bodily Injury** means physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time. This includes mental anguish, mental injury, shock, fright or death resulting from physical injury, sickness or disease.

E.  **Claims Expense** means:

1.  The cost of claims investigation;

2.  The cost of litigation;

3.  Interest as required by law on awards or judgments, or

4.  Legal expenses which can be directly allocated to a specific claim.

**Claims Expense** does not include:

5.  Salaries and travel expenses of employees of the **Insured**;

6.  Expenses of any other insurer;

7.  Salaries and overhead expenses and expenses incurred by any **Claims Servicing Organization** other than as a direct result of handling the claim or **Suit**; or

8.  Any other expenses incurred by any **Claims Servicing Organization** which cannot be allocated to a specific claim.

F.  **Coverage Territory** means:

1.  The United States of America, its territories and possessions, Puerto Rico; and Canada;

2.  International waters or airspace, providing the injury or damage does not occur in the course of travel or transportation to or from any place not included in 1. above; or

3.  All parts of the world if:

a.  The injury or damage arises out of:

      1)    Goods or products made or sold by the **Insured** in the territory described above; or

      2)    The activities of a person whose home is in the territory described in 1. above, but is away for a short time on business of the **Insured**; and

   b.    The **Insured's** responsibility to pay damages is determined in a **Suit** on the merits, in the territory described in 1. above or in a settlement the Company agrees to.

G.   **Impaired Property** means tangible property, other than the **Insured's Product** or the **Insured's Work**, that cannot be used or is less useful because:

   1.    It incorporates the **Insured's Product** or the **Insured's Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   2.    The **Insured** has failed to fulfill the terms of a contract or agreement. if such property can be restored to use by:

      a.    The repair, replacement, adjustment or removal of the **Insured's Product** or the **Insured's Work**; or

      b.    The **Insured's** fulfilling the terms of the contract or agreement.

H.   **Insured Contract** means:

   1.    A contract for a lease of premises;

   2.    A sidetrack agreement;

   3.    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   4.    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   5.    An elevator maintenance agreement;

   6.    That part of any other contract or agreement pertaining to the **Insured's** business (including an indemnification of a municipality in connection with work performed for a municipality) under which the **Insured** assumes the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization. "Tort liability" means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph 6 does not include that part of any contract or agreement:

      a.    That indemnifies any person or organization for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations within 50 ft. of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      b.    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         1)    Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

         2)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      c.    Under which the **Insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering of or failure to render professional services, including those listed in (b) above and supervisory, inspection or architectural engineering services.

I.   **Insured's Product means:**

   1.   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      a.   The **Insured**;

      b.   Others trading under the **Insured's** name; or

      c.   A person or organization whose business or assets the **Insured** has acquired; and

   2.   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Insured's Product** includes:

   3.   Warranties or representations made at any time with respect to the fitness, quality, durability or performance or use of the **Insured's Products**; and

   4.   The providing of or failure to provide warnings or instructions.

**Insured's Product** does not include vending machines or other property rented to or located for the use of others but not sold.

J.   **Insured's Work means:**

   1.   Work or operations performed by or on behalf of the **Insured**, and

   2.   Materials, parts or equipment furnished in connection with such work or operations.

**Insured's Work** includes:

   3.   Warranties or representations made at any time with respect to the fitness, quality, durability, or use of the **Insured's Work**; and

   4.   The providing of or failure to provide warnings or instructions.

K.   **Loading or Unloading** means the handling of property:

   1.   After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **Automobile**;

   2.   While it is in or on an aircraft, watercraft or **Automobile**; or

   3.   While it is being moved from an aircraft, watercraft or **Automobile** to the place where it is finally delivered.

However, **Loading or Unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **Automobile**.

L.   **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

   1.   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   2.   Vehicles maintained for use solely on or next to premises the **Insured** owns or rents;

   3.   Vehicles that travel on crawler treads;

   4.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

35

  a. Power cranes, shovels, loaders, diggers or drills; or

  b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently-attached equipment of the following types:

  a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

  b. Cherry pickers and similar devices used to raise or lower workers;

6. Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment** but will be considered **Automobiles**:

  a. Equipment designed primarily for:

   1) Snow removal;

   2) Road maintenance, but not construction or resurfacing;

   3) Street cleaning;

  b. Cherry pickers and similar devices mounted on **Automobile** or truck chassis and used to raise or lower workers; and

  c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

M. **Named Insured** means any individual or organization shown in the Declarations.

N. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. However, with respect to **Personal Injury and Advertising Injury**, **Occurrence** means an act or offense, including continuous or repeated exposure to the same injurious material.

O. **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. Wrongful entry into, or eviction of a person from, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies with the permission of or on behalf of its owner, landlord or lessor;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

5. Oral or written publication of material that violates a person's right of privacy.

P. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes materials to be recycled, reconditioned or reclaimed.

36

Q    Products-Completed Operations Hazard:

1.    Includes all **Bodily Injury** and **Property Damage** occurring away from premises the **Insured** owns or rents and arising out of the **Insured's Product** or the **Insured's Work** except:

   a.    Products that are still in the physical possession of the **Insured**; or

   b.    Work that has not yet been completed or abandoned.

2.    The **Insured's Work** will be deemed completed at the earliest of the following times:

   a.    When all of the work required in the **Insured's** contract has been completed;

   b.    When all of the work to be done at the site has been completed if the **Insured's** contract requires work at more than one site; or

   c.    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3.    This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

   a.    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the **Loading or Unloading** of it;

   b.    The existence of tools, uninstalled equipment or abandoned or unused materials.

R.    **Property Damage** means:

1.    Physical injury to tangible property, including all resulting loss of use of that property; or

2.    Loss of use of tangible property that is not physically injured.

S.    **Retained Amount** means the amount retained by the **Insured** or the amount of underlying insurance for damages and **Claims Expense** arising out of each **Occurrence** for which coverage is afforded by this policy. The **Retained Amount** is shown in the Declarations.

T.    **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** to which this insurance applies are alleged. **Suit** includes an arbitration proceeding in which such damages are claimed to which the **Insured** must submit.

U.    **Ultimate Net Loss** means all sums actually paid, or which the **Insured** is legally obligated to pay, as damages and **Claims Expense** in satisfaction of claims or **Suits** for which insurance is afforded under this policy, after deduction of all collectible recoveries or salvage.

## SECTION VI - CLAIMS SERVICING AND FUNDING OF RETAINED AMOUNTS

A.    CLAIMS SERVICING ORGANIZATION

1.    The **Named Insured** designates the **Claims Servicing Organization** shown in the Declarations to perform the following services for claims or **Suits** seeking damages against an **Insured** to which this policy may apply regardless of the application of any **Retained Amount**:

   a.    Investigate and settle all claims and defend all **Suits**;

   b.    Maintain accurate records of all details incident to claims payments; and

37

    c.   Furnish monthly claims records to the first Named Insured.

2.   In the event of cancellation, expiration or revision of the servicing contract between the Named Insured and the Claims Servicing Organization, the Named Insured shall notify the Company within ten (10) days of the effective date of such cancellation, expiration or revision.

B.   **FUNDING OF RETAINED AMOUNTS**

The Named Insured will maintain a specific fund in an amount and manner to be determined by mutual agreement between the Named Insured, the Claims Servicing Organization designated in the Declarations and the Company for the payment of all claims and Claims Expense within the Retained Amount portion of claims or Suits seeking damages against an Insured to which this policy may apply.

## SECTION VII - CONDITIONS

A.   APPEAL

In the event the Insured elects not to appeal a judgement or award in excess of any applicable Retained Amount, the Company may elect to appeal, at its own cost and expense, and shall be liable for expenses related to the appeal. However, in no event will the Company's liability for such award or judgement exceed the applicable Limits of Insurance set forth in this policy plus the costs and expenses of such appeal.

B.   BANKRUPTCY OR INSOLVENCY OF THE INSURED

Bankruptcy or insolvency of the Insured will not relieve the Company of its obligations under this policy. Payments due under this policy in excess of the Retained Amount will be made by the Company as if the Insured had not become bankrupt or insolvent. Such payments will be made to the Trustee in Bankruptcy or as a court of competent jurisdiction may direct. In no event shall such bankruptcy or insolvency of the Insured obligate the Company for any payments in excess of the applicable Limits of Insurance set forth in this policy or for any payments of the Insured's obligations within the Retained Amount as defined in this policy. In the event of bankruptcy the Company shall have the right, but not the duty, to assume the defense of certain claims or Suits that the Insured is unable or unwilling to continue to defend.

C.   CANCELLATION

The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

The Company may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

1.   Ten (10) days before the effective date of cancellation if canceled for nonpayment of premium; or

2.   Sixty (60) days before the effective date of cancellation if canceled for any other reason.

The Company will mail or deliver notice to the first Named Insured's last known mailing address. Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date and all coverage for claims occurring after that date will cease.

If this policy is canceled, the Company will send the first Named Insured any premium refund due. If the Company cancels, any refund will be calculated on a pro-rata basis, subject to the minimum premium provisions detailed in SECTION VII - CONDITIONS, Item M. PREMIUM. If the first Named Insured cancels, any refund will be determined by the Company in accordance with its short rate table then in use, and subject to any applicable minimum premium conditions. The cancellation will be effective even if the Company has not made or offered a refund. If notice is mailed, proof of mailing will be sufficient proof of notice.

D.   CAPTIONS

The headings or captions used in this policy are for the purposes of reference only and shall not otherwise affect the meaning of this policy.

E.   CHANGES

This policy contains all the agreements concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by the Company and made a part of this policy.

F.   CONFORMITY WITH STATUTE

Any terms of this policy, which are in conflict with any law applicable to this policy, are hereby amended to conform with such laws.

G.   DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM OR SUIT

1.   The first **Named Insured** shall immediately notify the Company in writing of any **Occurrence**, claim or **Suit** that may reasonably be expected to result in a claim against this policy. For the purpose of determining when notice shall be made to the Company, the **Insured** shall assume liability does exist, and for the full amount of any claim.

2.   The first **Named Insured** shall immediately notify the Company in writing of any claims which:

a.   Equals or exceeds fifty percent (50%) of the **Retained Amount** as the total amount demanded for damages;

b.   Results in the establishment of a reserve, or would reasonably require the establishment of a reserve, for damages and **Claims Expense** which equals or exceeds fifty percent (50%) of the **Retained Amount**;

c.   Regardless of the amount, is still pending thirty-six (36) months after the expiration date of this policy; or

d.   Involves any of the following injuries:

1)   A fatality;

2)   An amputation or loss of use of a major extremity;

3)   Any serious head injury (including skull fracture or loss of sight of either or both eyes);

4)   Any injury to the spinal cord;

5)   Any burns involving over ten percent (10%) of the body with third degree, or over thirty percent (30%) of the body with second degree;

6)   Any injury where it appears reasonably likely that there will be disability of one year or more; or

7)   Any loss or damage that arises as a result of any actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time.

3.   Notification of an **Occurrence**, claim or **Suit** shall include:

a.   How, when and where the **Occurrence** took place;

b.   The names and addresses of any injured persons and witnesses; and

c.   The nature and location of any injury or damage arising out of the **Occurrence**.

37

4.   All **Insureds** must:

   a.   Immediately send the Company copies of any demands, notices, summonses or legal papers received in connection with such claim or **Suit**;

   b.   Authorize the Company to obtain records and other information;

   c.   Cooperate with the Company in any investigation or settlement of the claim or **Suit**;

   d.   Assist the Company, upon the Company's request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply; and

   e.   Do all things reasonably necessary to defend and protect both the **Insured's** and Company's interest.

5.   No **Insured** will, except at his or her own cost, voluntarily make a payment, assume any obligation, or incur any expense.

## H.   EXAMINATION OF THE INSURED'S BOOKS AND RECORDS

The Company may examine and audit the **Insured's** books and records as they may relate to this policy at any time during the Policy Period and up to three (3) years after the final settlement of all claims or payments under this policy, including records regarding any claim against the **Insured** for which coverage may be afforded by this policy, or for which coverage may be afforded except for the application of the **Retained Amount**.

The Company does not undertake to perform the duties of any person or organization to provide for the settlement of claims or the keeping of any records. The Company does not warrant the adequacy of claims reserves or that the **Insured's** books, records, claims, claims reserves, or any materials examined are correct or are properly handled.

## I.   INSPECTIONS AND SURVEYS

The Company has the right, but is not obligated to:

1.   Make inspections and surveys at any time;

2.   Give reports on the conditions the Company finds; and

3.   Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. The Company does not make safety inspections. The Company does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And the Company does not warrant that conditions:

4.   Are safe or healthful; or

5.   Comply with laws, regulations, codes or standards.

This condition applies not only to the Company, but also to any rating, advisory, rate service or similar organization, acting on behalf of the Company, which makes insurance inspections, surveys, reports or recommendations.

## J.   LEGAL ACTION AGAINST THE COMPANY

No person or organization has a right under this policy:

40

   1.   To join the Company as a party or otherwise bring the Company into a **Suit** asking for damages from an **Insured**; or

   2.   To sue the Company on this policy unless all applicable parties have complied fully with all of the policy's terms.

K.   OTHER INSURANCE

   1.   The **Insured** shall pay from its own account all amounts within the **Retained Amount** as defined in this policy.

   2.   If there is any other insurance available to the **Insured** which affords coverage in excess of any **Retained Amount** with respect to injury or damages to which this policy applies, whether on a primary, excess, contingent, extended reporting period, retroactive, or any other basis, this policy shall apply as excess of and not contribute with such other insurance. However, this provision does not apply to insurance, which is purchased by the **Named Insured** to be specifically excess of the sum of any applicable **Retained Amount** and the Limits of Insurance afforded by this policy.

L.   PAYMENT OF LOSS

   1.   The Company shall be liable for payment under this policy only after a final judgement has been satisfied, a settlement made or **Claims Expense** paid, provided in all cases the Company consents thereto in writing.

   2.   Payment by the Company will be made within thirty (30) days after the Company has received proof of payment of the **Retained Amount** by the **Insured**.

M.   PREMIUM

   1.   The premium for this policy shall be computed on the basis stated in the Declarations. The Advance Premium stated in the Declarations, unless otherwise specified under "Basis of Premium" as "Flat Charge", is an estimated premium only. The earned premium shall be computed upon termination of this policy or at the end of each twelve (12) month period if the policy is written for a multi-year term, whichever is earlier. If the earned premium is more than the Advance Premium paid, the first **Named Insured** shall pay the excess to the Company. The Advance Premium shall be considered the minimum premium due for any full twelve-month Policy Period.

   2.   In the event the policy is cancelled before the full twelve-month period has passed, a Policywriting Minimum Premium as indicated in the Declarations shall apply. The Policywriting Minimum shall apply separately to each individual twelve-month Policy Period.

   3.   Where "payroll" is specified under "Basis of Premium", payroll means the entire payroll and other remuneration paid or payable to all employees, officers, officials and members of the **Insured**. Remuneration includes: Payroll, salaries, commissions, bonuses, overtime pay, pay for holidays, vacations, pay for piece work, payments under profit sharing or incentive plans, the value of lodging, apartments, and meals received by employees as part of their pay, and the value of store certificates, merchandise, credits, or any other substitute for money received by employees as part of their pay.

   4.   The **Insured** will keep records needed to compute the premium in accordance with items 1 and 3 above and send copies to the Company when the Company asks for such records, upon expiration of the policy, or at the end of each interim policy adjustment period.

N.   SEPARATION OF INSUREDS

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first **Named Insured**, this insurance applies:

   1.   As if each **Named Insured** were the only **Named Insured**; and

41



2.    Separately to each **Insured** against whom claim is made or **Suit** is brought.

O.    **SOLE REPRESENTATIVE**

If more than one **Named Insured** is named in the Declarations, the first **Named Insured** listed in the Declarations will act on behalf of all **Insureds** to give or receive notice of cancellation, receive premium or payment, or request change in this policy.

P.    **SUBROGATION**

In the event of any payment under this policy, the **Insured** must notify the Company of any of the **Insured's** rights of recovery against any person or organization. The Company shall be subrogated to all such rights and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after loss to prejudice such rights.

Any amounts recovered shall be apportioned in the following order:

1.    Any amount paid in excess of the payments under this policy shall first be reimbursed up to the amount paid by those, including the **Insured**, who made such payments;

2.    The Company is then to be reimbursed up to the amount the Company paid;

3.    Any remainder shall be available to the interests of those over who this coverage is in excess and who are entitled to claim such remainder.

Expenses of all proceedings to recover from anyone liable for injury or damage covered by this policy will be allocated among the parties receiving such recovery in the ratio represented by the allocation of any damages that have been recovered. All related expenses will be paid by the Company if such an action or proceeding undertaken solely by the Company results in no recovery.

Q.    **TRANSFER OF RIGHTS AND DUTIES UNDER THIS POLICY**

This policy may not be transferred without the written consent of the Company.

42

THIS ENDORSL  :NT CHANGES THE POLICY. PLEASE R.  J IT CAREFULLY

# FORMS AND ENDORSEMENTS SCHEDULE

The following forms and endorsements are attached to this policy:

1. Retained Amount Policy – Declaration Page
2. Retained Amount Policy – CRA00001
3. Forms and Endorsements Schedule
4. Additional Insured Mortgage, Assignee, or Receiver
5. Additional Insured – Owners, Lessees or Contractors – Completed Operations
6. Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization
7. Adjustable Premium Endorsement
8. Aggregate Limits of Insurance (Per Location) – EL 28031
9. Aggregate Limits of Insurance (Per Project) – EL 28032
10. Alienated Premises Endorsement
11. Architects and Engineers Errors & Omissions Exclusion
12. Automobile Liability Exclusion – EL 28009
13. Continuing Damage Exclusion
14. Contractual Liability – Railroads
15. Designated Operations Covered by a Consolidated (Wrap-Up) Insurance Program Exclusion
16. Employee Benefits Liability Coverage – EL 28041
17. Employment Practices Exclusion – EL 28016
18. Federal Employment Liability Act (FELA) Exclusion – EL 19037A
19. Fungi, Wet Rot, Dry Rot and Bacteria Exclusion – EL 24009
20. Joint Venture Exclusion – EL 19146A
21. Knowledge of Occurrence Endorsement
22. Named Insured Endorsement
23. Notice of Occurrence
24. Pending and Prior Litigation Exclusion
25. Primary/Non-Contributory Insurance Endorsement
26. Punitive or Exemplary Damages Exclusion

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004   to   6/1/2005   (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

43

THIS ENDORSE. .NT CHANGES THE POLICY. PLEASE R. ) IT CAREFULLY

# FORMS AND ENDORSEMENTS SCHEDULE

27. Residential Work Except Apartments Exclusion

28. Service of Suit Endorsement

29. Terrorism Exclusion with an Exception for Certified Acts of Terrorism – EL24033

30. Unintentional Errors and Omissions

31. Waiver of Subrogation

32. Signature Page

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective.

From    6/14/2004        to    6/1/2005        (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

Forms and Endorsements Schedule                                          Page 2 of 2

44

THIS ENDO   EMENT CHANGES THE POLICY.  PLEAS   EAD IT CAREFULLY

# ADDITIONAL INSURED
# MORTGAGEE, ASSIGNEE, OR RECEIVER

### SCHEDULE

Name of Person or Organization:

Any person or organization where required by written insured contract.

Designation of Premises:

SECTION IV - WHO IS AN INSURED is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by the **Named Insured** and shown in the Schedule.

This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By  Clarendon America Insurance Company           , and is effective

From   6/14/2004      to  6/1/2005      (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

EL 28046                    Page 1 of 1                    5-04

45

THIS ENDO͟  ͟MENT CHANGES THE POLICY. PLEAS͟  ͟EAD IT CAREFULLY

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

---

### SCHEDULE

| |
|---|
| **Name of Person or Organization:**<br><br>Any person or organization where required by a written insured contract |
| **Location And Description of Completed Operations:** |
| **Additional Premium:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section IV – WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of **"Insured's Work"** at the location designated and described in the schedule of this endorsement performed for that insured and included in the **"Products-Completed Operations Hazard"**.

---

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company              , and is effective

From   6/14/2004   to   6/1/2005      (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

46

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

### SCHEDULE

| |
|---|
| Name of Person or Organization: |
| Any person or organization where required in a written insured contract |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section IV – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of **Insured's Work** performed for that insured.

With respect to the insurance afforded to these additional insureds, the following exclusion is added:

This insurance does not apply to **Bodily Injury** or **Property Damage** occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of **Insured's Work** out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to    Legacy Partners, Inc.

By    Clarendon America Insurance Company                              , and is effective

From    6/14/2004        To  6/1/2005        (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

47

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## ADJUSTABLE PREMIUM ENDORSEMENT

The premium stated in the declarations is an estimated premium only. Upon termination of the policy, the earned premium shall be computed by applying the rate shown in the schedule below times the audited basis of premium.

If the earned premium computed exceeds the estimated advance premium paid, the first **Named Insured** shall pay the excess to us.

If the earned premium computed is less than the estimated advance premium paid, the minimum premium will apply.

The first **Named Insured** must keep records of the information we need for Premium Computation, and send us copies at such times as we may request.

### SCHEDULE

| Basis of Premium | Exposure | Rate | Estimated Advance Premium | Minimum Premium |
|---|---|---|---|---|
| Residential United Owned | 9,738 | $16.80 | $157,708 | $157,708 |
| Commercial SF Owned | 1,673,957 | $13.15 | $21,221 | $21,221 |
| Management Fees: Commercial & Residential | $20,300,000 | $.92/1,000 of rev. | $18,190 | $18,190 |
| Construction Activity (hard cost) | $48,000,000 | $1.99/$1,000 of const. | $92,081 | $92,081 |

The final audit will be conducted as follows:

Construction Costs and Management Fees will be audited according to normal and customary audit procedures used in the insurance industry.

Apartment Units and Owned Commercial Square Footage will be as follows:

Number of Apartment Units at inception plus Number of Apartment Units at expiration divided by two. Owned Commercial Square Footage at inception plus Owned Commercial Square Footage at expiration divided by two.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company _____, and is effective

From    6/14/2004        to   6/1/2005        (12:01 A.M. Standard Time)

Issued Date: 8/20/2004

Adjustable Premium Endorsement

48

THIS ENDOR    .MENT CHANGES THE POLICY.  PLEAS.    .EAD IT CAREFULLY

## AGGREGATE LIMITS OF INSURANCE (PER LOCATION)

The General Aggregate Limit under SECTION II – LIMITS OF INSURANCE applies separately to each of the **Insured's locations** owned by or rented to the **Insured**.

**Location** means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004      to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

4/9

THIS ENDOR    MENT CHANGES THE POLICY. PLEAS.    EAD IT CAREFULLY

## AGGREGATE LIMITS OF INSURANCE (PER PROJECT)

The General Aggregate Limit under SECTION II – LIMITS OF INSURANCE applies separately to each of the Insured's projects away from premises owned by or rented to the Insured.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                , and is effective

From   6/14/2004         to   6/1/2005          (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

EL 28032                            Page 1 of 1                          2-04

50

THIS ENDOR    .MENT CHANGES THE POLICY. PLEAS.    .EAD IT CAREFULLY

# ALIENATED PREMISES ENDORSEMENT

SECTION I-C EXCLUSIONS, 9. – Damage to Property is deleted in its entirety and replaced with the following:

### 9. Damage to Property

a.  Property the Named Insured owns, rents or occupies;

b.  Premises which are "your work" and which you sell, give away or abandon, but only if the Property Damage arises out of any part of those premises and occurred from conditions that were known by you, or should have reasonably been known by you, at the time the property was sold, given away, or abandoned;

c.  Property loaned to the Named Insured;

d.  Property in the care, custody or control of the Named Insured or over which the Named Insured is for any purpose exercising physical control;

e.  That particular part of real property on which the Named Insured or any contractors or subcontractors working directly or indirectly on behalf of the Named Insured are performing operations, if the Property Damage arises out of those operations; or

f.  That particular part of any property that must be restored, repaired or replaced because the Named Insured's Work was incorrectly performed on it.

Paragraph (b) of this exclusion does not apply if the premises are the Named Insured's Work and were never occupied, rented or held for rental by the Named Insured.

Paragraphs (c), (d), (e), and (f) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (f) of this exclusion does not apply to Property Damage included in the Products-Completed Operations Hazard.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number  XSR00410538

Issued to  Legacy Partners, Inc.

By  Clarendon America Insurance Company    , and is effective

From  6/14/2004    to  6/1/2005    (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

51

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# ARCHITECTS AND ENGINEERS ERRORS & OMISSIONS EXCLUSION

This insurance does not apply to any liability arising out of any professional services performed by, for, or on behalf of any **insured**, including but not limited to:

a:   The preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications;

b:   Supervisory, inspection or engineering services.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                     , and is effective

From   6/14/2004        to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

Architects and Engineers Errors & Omissions Exclusion                     Page 1 of 1

52

THIS ENDO⦁⦁MENT CHANGES THE POLICY. PLEAS⦁⦁READ IT CAREFULLY

## AUTOMOBILE LIABILITY EXCLUSION

The following is added to SECTION I – C. EXCLUSIONS:

**Automobile**

Bodily Injury or Property Damage arising out of the ownership, maintenance, use or entrustment to others of any Automobile owned or operated by or rented or loaned to any Insured. Use includes operation and Loading or Unloading.

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any Automobile that is owned or operated by or rented or loaned to any Insured.

This exclusion does not apply to:

(1) Parking an Automobile on, or on the ways next to, premises the Insured owns or rents, provided the Automobile is not owned by or rented or loaned to the Insured;

(2) Bodily Injury or Property Damage arising out of the operation of any Mobile Equipment.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to   Legacy Partners, Inc.

By    Clarendon America Insurance Company                , and is effective

From    6/14/2004        to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# CONTINUING DAMAGE EXCLUSION

The following is added to SECTION I COVERAGE, C. EXCLUSIONS:

25. **Continuing Damage**

This insurance does not apply to:

(1) "Bodily injury" or "property damage" that arises out of an "occurrence" which occurred prior to the inception date of this policy; or

(2) "Bodily injury" or "property damage" which is, or alleged to be, in the process of occurring as of the inception date of this policy, even if the "occurrence" continues during the policy period.

However, this exclusion would apply only to the first policy in a series of policies for which we issued renewal policies.

---

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to:  Legacy Partners, Inc.

By    Clarendon America Insurance Company                       , and is effective

From    6/14/2004        to    6/1/2005        (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

54

THIS ENDORSE⬤ENT CHANGES THE POLICY.  PLEASE R⬤D IT CAREFULLY

# CONTRACTUAL LIABILITY - RAILROADS

**SCHEDULE**

| Scheduled Railroad: | Designated Job Site: |
|---|---|
| Any person or organization where required by a written insured contract. | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

H.  "Insured Contract" means:

1.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

2.  A sidetrack agreement;

3.  Any easement or license agreement;

4.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5.  An elevator maintenance agreement;

6.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004            To  6/1/2005          (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

Contractual Liability - Railroads                                                    Page 1 of 2

55

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## CONTRACTUAL LIABILITY - RAILROADS

Paragraph 6. does not include that part of any contract or agreement:

  a.  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      1) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

  b.  Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph (a) above and supervisory, inspection, architectural or engineering activities.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By  Clarendon America Insurance Company     , and is effective

From  6/14/2004    To  6/1/2005    (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

56

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM EXCLUSION

**SCHEDULE**

Description and Location of Operation(s):

Any Owner or Contractor Controlled Consolidated Insurance Program

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **C., EXCLUSIONS** of **SECTION I – COVERAGE – Bodily Injury and Property Damage Liability:**

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of either your ongoing operations, or operations included within the **Products-Completed Operations Hazard** at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project, in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1) Provides coverage identical to that provided by this Coverage Part;

(2) Has limits adequate to cover all claims; or

(3) Remains in effect.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                     , and is effective

From   6/14/2004          To  6/1/2005       (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

57

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# EMPLOYEE BENEFITS LIABILITY COVERAGE

THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

### SCHEDULE

| Limits of Insurance: | $1,000,000 | Each Employee |
|---|---|---|
| | $1,000,000 | Aggregate |
| Retained Amount: | $100,000 | Each Employee |
| Retroactive Date: | 6/14/2004 | |

**A.    INSURING AGREEMENT**

1.  Subject to the other provisions of this policy, the Company will pay on behalf of the **Insured** that portion of the **Ultimate Net Loss**, in excess of the **Retained Amount**, which the **Insured** has become legally obligated to pay as damages and related **Claims Expense** because of any act, error or omission, of the **Insured**, or of any other person for whose acts the **Insured** is legally liable, to which this insurance applies.

2.  The amount the Company will pay is limited as described in paragraph **D., LIMITS OF INSURANCE** and paragraph **E., RETAINED AMOUNT.**

3.  The defense of claims or **Suits** to which this policy applies is the obligation of the **Insured.**

4.  The **Insured** shall pay **Claims Expense** within the **Retained Amount**, which relates to the defense of claims or **Suits.**

5.  The Company will have the right and opportunity, but neither the duty nor obligation, to associate with the **Insured** in the defense and control of any **claim** or **Suit** seeking damages in excess of the **Retained Amount**, arising out of any act, error or omission, or which, in the Company's opinion, may create liability under this policy; and in such event:

    a.   The **Insured** and Company shall cooperate fully; and

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                        , and is effective

From   6/14/2004        to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date:   8/20/2004

58

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## EMPLOYEE BENEFITS LIABILITY COVERAGE

    b.    No **Claims Expense** shall be incurred on behalf of the Company without the written consent of the Company, and notwithstanding such consent, all such **Claims Expense** shall be reasonable.

6.    Provided the Company consents in writing to a settlement made, a judgment satisfied or the payment of **Claims Expense** associated with a claim or **Suit** which exceeds the **Retained Amount**, the Company will pay that portion of the reasonable **Claims Expense** which is in excess of the **Claims Expense** within the **Retained Amount**, however,:

    a.    The Company will not pay more than the applicable Limit of Insurance as specified in paragraph D., LIMITS OF INSURANCE for the sum of damages; and

    b.    If the Company recommends a settlement to the **Insured**, which is acceptable to a claimant and the **Insured** does not agree to such settlement, then:

        1)    The Limit of Insurance (as specified in paragraph D., LIMITS OF INSURANCE) shall be reduced to an amount equal to the amount for which the claim or **Suit** could have been settled. This Limit of Insurance shall be in excess of the **Retained Amount** and,

        2)    The Company will not pay for, nor will the amount of any **Retained Amount** include, any prejudgment interest based upon that period of time after such recommendation is made.

7.    Payment of any **Claims Expense** by the Company does not reduce the Limits of Insurance provided by this endorsement.

The Company is not obligated to defend any **Suit** or investigate any claim after it has paid the total applicable Limit of Insurance, as specified in paragraph D., LIMITS OF INSURANCE, in the payment of judgments or settlements.

8.    This insurance applies to damages only if:

    a.    The act, error or omission, is negligently committed in the **administration of the Named Insured's Employee Benefit Program**;

    b.    The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

    c.    A **Claim** for damages, because of an act, error or omission, is first made against any **Insured**, in accordance with Paragraph (1) below, during the policy period or an Extended Reporting Period the Company provides in Section VIII of this policy endorsement.

---

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to  Legacy Partners, Inc.

By  Clarendon America Insurance Company    , and is effective

From  6/14/2004    to  6/1/2005    (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

59



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## EMPLOYEE BENEFITS LIABILITY COVERAGE

(1)  A **Claim** seeking damages will be deemed to have been made at the earlier of the following times:

    (a)  When notice of such **Claim** is received and recorded by any **Insured** or by the Company, whichever comes first; or

    (b)  When the Company makes a settlement in accordance with Paragraph A.1., above.

A **Claim** received and recorded by the **Insured** within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d.  All **claims** for damages made by an **Employee** because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such **employee's** dependents and beneficiaries, will be deemed to have been made at the time the first of those **claims** is made against any **Insured**.

## B.  EXCLUSIONS

This insurance does not apply to:

1.  **Dishonest, Fraudulent, Criminal Or Malicious Act**
    Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any **Insured**, including the willful or reckless violation of any statute.

2.  **Bodily Injury, Property Damage, Personal Injury or Advertising Injury**
    Bodily Injury, Property Damage, Personal Injury or Advertising Injury.

3.  **Failure To Perform A Contract**
    Damages arising out of failure of performance of contract by any insurer.

4.  **Insufficiency Of Funds**
    Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the **Employee Benefit Program**.

5.  **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**
    Any claim based upon:

---

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number  <u>XSR00410538</u>

Issued to  <u>Legacy Partners, Inc.</u>

By  <u>Clarendon America Insurance Company</u>  , and is effective

From  <u>6/14/2004</u>  to  <u>6/1/2005</u>  (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

<span style="text-align:center">60</span>

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# EMPLOYEE BENEFITS LIABILITY COVERAGE

    (a)  Failure of any investment to perform;

    (b)  Errors in providing information on past performance of investment vehicles; or

    (c)  Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the **Employee Benefit Program.**

6. **Workers' Compensation And Similar Laws**
Any **claim** arising out of the **Insured's** failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

7. **ERISA**
Damages for which any **Insured** is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

8. **Available Benefits**
Any **claim** for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the **Insured**, from the applicable funds accrued or other collectible insurance.

9. **Taxes, Fines Or Penalties**
Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

10. **Employment-Related Practices**
Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

## C. WHO IS AN INSURED

For the purposes of the coverage provided by this endorsement, each of the following are also **Insureds:**

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number  XSR00410538

Issued to  Legacy Partners, Inc.

By  Clarendon America Insurance Company  , and is effective

From  6/14/2004  to  6/1/2005  (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

EL 28041 | Page 4 of 10 | 2-04

61

THIS ENDOR◼ ◼◼ENT CHANGES THE POLICY. PLEASE ◼EAD IT CAREFULLY

# EMPLOYEE BENEFITS LIABILITY COVERAGE

1. Each of the **Named Insured's employees** who is or was authorized to administer the **Named Insured's Employee Benefit Program.**

2. Any organization the **Named Insured** newly acquires or forms, other than a partnership, joint venture or limited liability company, and over which the **Named Insured** maintains ownership or majority interest, will qualify as a **Named Insured** if no other similar insurance applies to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after the **Named Insured** acquires or forms the organization or the end of the policy period, whichever is earlier.

   b. Coverage under this provision does not apply to any act, error or omission that was committed before the **Named Insured** acquired or formed the organization.

## D. LIMITS OF INSURANCE

For the purposes of the coverage provided by this endorsement, SECTION II – LIMITS OF INSURANCE is replaced by the following:

1. Limits Of Insurance

   a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      (1) **Insureds;**

      (2) **Claims** made or **Suits** brought;

      (3) Persons or organizations making **claims** or bringing **Suits**;

      (4) Acts, errors or omissions; or

      (5) Benefits included in your **Employee Benefit Program.**

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004       to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

62

THIS ENDOR???MENT CHANGES THE POLICY. PLEAS??? ???AD IT CAREFULLY

# EMPLOYEE BENEFITS LIABILITY COVERAGE

### DUTIES IN THE EVENT OF AN ACT, ERROR OR OMISSION, OR CLAIM OR SUIT

    a. The first **Named Insured** shall immediately notify the Company in writing of an act, error or omission which may result in a **claim**. Notification shall include:

        (1) What the act, error or omission was and when it occurred; and

        (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

    b. If a **claim** is made or **Suit** is brought against any **Insured**, the **Named Insured** must:

        (1) Immediately record the specifics of the **claim** or **Suit** and the date received;

        (2) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim** or **Suit**;

        (3) Authorize the Company to obtain records and other information;

        (4) Cooperate with the Company in the investigation or settlement of the **claim** or **Suit**; and

        (5) Assist the Company, upon the Company's request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of an act, error or omission to which this insurance may also apply.

    c. No **Insured** will, except at that **Insured's** own cost, voluntarily make a payment, assume any obligation or incur any expense.

G. SECTION VIII – EXTENDED REPORTING PERIOD is added:

    SECTION VIII – EXTENDED REPORTING PERIOD

    A. The **Named Insured** will have the right to purchase an Extended Reporting Period, as described below, if:

       1. This endorsement is not renewed or canceled for other than nonpayment of premium; or

---

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By  Clarendon America Insurance Company , and is effective

From  6/14/2004  to  6/1/2005  (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

63

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# EMPLOYEE BENEFITS LIABILITY COVERAGE

2. The Company renews or replaces this endorsement with insurance that:

    (a)  Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

    (b)  Does not apply to an act, error or omission on a claims-made basis.

B.  The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

C.  An Extended Reporting Period of three years is available, but only by an endorsement and for an extra charge. The **Named Insured** must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless the **Named Insured** pays the additional premium promptly when due. The Company will determine the additional premium in accordance with the Company's rules and rates. In doing so, the Company may take into account the following:

  1. The **Employee Benefit Programs** insured;

  2. Previous types and amounts of insurance;

  3. Limits of insurance available under this policy for future payment of damages; and

  4. Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement. The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for **claims** first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

D.  The Extended Reporting Period does not reinstate or increase the Limits of Insurance applicable to Employee Benefits Liability to which this endorsement applies.

H.  For the purposes of the coverage provided by this endorsement, the following definitions are added to SECTION V - DEFINITIONS.

**Administration** means:

---

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By  Clarendon America Insurance Company  , and is effective

From  6/14/2004  to  6/1/2005   (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

EL 28041                    Page 8 of 10                2-04

64

THIS ENDO    EMENT CHANGES THE POLICY. PLEAS    READ IT CAREFULLY

# EMPLOYEE BENEFITS LIABILITY COVERAGE

1.  Providing information to employees, including their dependents and beneficiaries, with respect to eligibility for or scope of **employee benefit programs**;

2.  Handling records in connection with the **employee benefit program**; or

3.  Effecting, continuing or terminating any employee's participation in any benefit included in the **employee benefit program**.

However, **Administration** does not include handling payroll deductions.

**Cafeteria plans** means plans authorized by applicable law to allow **employees** to elect to pay for certain benefits with pre-tax dollars;

**Claim** means any demand, or **Suit**, made by an **employee** or an **employee's** dependents and beneficiaries, for damages as the result of an act, error or omission.

**Employee Benefit Program** means a program providing some or all of the following benefits to **employees**, whether provided through a **Cafeteria plan** or otherwise:

1.  Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an **employee** may subscribe to such benefits and such benefits are made generally available to those **employees** who satisfy the plan's eligibility requirements;

2.  Profit sharing plans; employee savings plans; employee stock ownership plans; pension plans and stock subscription plans, provided that no one other than an **employee** may subscribe to such benefits and such benefits are made generally available to all **employees** who are eligible under the plan for such benefits;

3.  Unemployment insurance, social security benefits; workers' compensation and disability benefits;

4.  Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

5.  Any other similar benefits designated in the **Schedule** or added thereto by endorsement.

**Employee** means a person actively employed, formerly employed, on leave of absence or disabled, or retired. **Employee** includes a leased worker. **Employee** does not include a temporary worker.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004       to   6/1/2005      (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

65

THIS ENDC⦁EMENT CHANGES THE POLICY. PLEA⦁ READ IT CAREFULLY

## EMPLOYEE BENEFITS LIABILITY COVERAGE

I.  For the purposes of the coverage provided by this endorsement, Definition R. in the DEFINITIONS Section is replaced by the following:

**Suit** means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. **Suit** includes:

a.  An arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with the Company's consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with the Company's consent.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004       to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

66

THIS ENDO⬤   EMENT CHANGES THE POLICY. PLEA⬤   READ IT CAREFULLY

# EMPLOYMENT PRACTICES EXCLUSION

This insurance does not apply to any liability arising out of employment-related or personnel practices, policies, acts or omissions. This includes but is not limited to:

1. Refusal to employ;

2. Termination of employment;

3. Coercion, criticism, demotion, failure to promote, evaluation, reassignment, discipline, defamation, self-defamation, harassment, humiliation, discrimination, libel, slander, false arrest or imprisonment, or violation of a person's right of privacy; or

4. To any consequential injury or damage as a result of 1., 2., or 3. above.

This exclusion applies:

    a.    To all claims, demands, charges, complaints or **Suits** by any person(s) or organizations(s) for damages because of such injury or liability, including damages for care and loss of services;

    b.    Whether any **Insured** may be held liable as an employer or in any other capacity either directly or indirectly related to employment; and

    c.    To any obligation to share damages with or repay someone else who must pay damages because of such injury or liability.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By  Clarendon America Insurance Company  , and is effective

From  6/14/2004  to  6/1/2005  (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

EL 28016          Page 1 of 1          2-04

THIS ENDO:    :MENT CHANGES THE POLICY.  PLEA:    READ IT CAREFULLY

# FEDERAL EMPLOYMENT LIABILITY ACT (FELA) EXCLUSION

This insurance does not apply to Liability imposed upon the **insured** or assumed by the **insured** under contract with respect to claims made or suits brought against the **insured** or any indemnitee pursuant to the "Federal Employment Liability Act" (45 U.S. Code, Sections 51-60, 1970) including any amendments or revisions thereto.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to    Legacy Partners, Inc.

By    Clarendon America Insurance Company                         , and is effective

From    6/14/2004       to    6/1/2005       (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

EL 19037A                         Page 1 of 1                         2-04

68

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# FUNGI, WET ROT, DRY ROT AND BACTERIA EXCLUSION

This insurance does not apply to:

1) Any liability arising out of, resulting from, caused or contributed to, directly or indirectly by:

   a)  Any **fungi**, wet rot, dry rot or bacteria; or

   b)  Any substance, vapor or gas produced by or arising out of any **fungi**; or

2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, **fungi**, wet rot, dry rot or bacteria, by any **Insured** or by any other person or entity.

This exclusion also includes:

   a)  Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any **fungi** to the extent that it results in, causes or contributes to such liability; or

   b)  Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with the above; or

   c)  Any obligation to share damages with or repay someone else who must pay damages because of such liability.

This exclusion applies regardless of any other cause, event, material, product or building component that contributed concurrently or in any sequence to such liability.

For the purpose of this endorsement, the following definition is added:

   **Fungi** means any type or form of fungus, including mold, mushrooms or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                              , and is effective

From   6/14/2004   to   6/1/2005   (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

69

THIS ENDORᵒ     ᴺT CHANGES THE POLICY. PLEAS     D IT CAREFULLY

# KNOWLEDGE OF OCCURRENCE

It is agreed that the Terms and Conditions of this Policy are amended as follows:

It is agreed that knowledge of an incident, act, error, omission, OCCURRENCE or offense by an agent, servant or employee of YOURS shall not in itself constitute knowledge by YOU unless YOUR General Counsel or Risk Manager shall have received notice of such OCCURRENCE.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number     XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                        , and is effective

From    6/14/2004      to   6/1/2005          (12:01 A.M. Standard Time)

Issued Date:  8/20/2004

70

THIS END⬤MENT CHANGES THE POLICY. PLE⬤EAD IT CAREFULLY

## JOINT VENTURE EXCLUSION

This insurance does not apply to any liability arising out of any joint venture, co-venture, joint lease, joint operating agreement or partnership in which the **Insured** has an interest unless any such joint venture, co-venture, joint lease, joint operating agreement or partnership has been specifically added by endorsement to this policy.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004   to   6/1/2005     (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

EL 19146A                          Page 1 of 1                          2-04

71

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# NAMED INSURED ENDORSEMENT

Named Insured

The following are Named Insureds under the policy to which this endorsement is attached:

1.    Legacy Partners Limited Partnership, Legacy Partners Residential, Inc., Legacy Partners Commercial, Inc., California Land Parcels, Inc., Legacy Partners Residential Development, Inc., Legacy Partners Commercial Development, Inc., Legacy Partners Commercial, LLC, Legacy Partners Residential Services, Inc., Legacy Partners Builders Inc., Legacy Partners Agency Corporation, American Financial Realty, Inc., Legacy Partners of Colorado, Inc., Lincoln Partners Agency Corporation, Legacy Partners 2478 LLC and Legacy Partners, Inc., including any predecessor or successor thereof; and

2.    Any **Legacy Partners Entity**, and the partners, directors, officers, employees, agents and members of any Named Insured; and

3.    Any **Named Partner**.

As used in this endorsement and the policy of which this endorsement is a part, the following definitions apply:

"**Legacy Partners Entity**" shall mean and include any and all partnerships, joint ventures, associations, affiliates, related entities, corporations, subsidiaries, limited liability companies, trusts, joint tenancies, tenancies in common or other entities or commercial enterprises in which:
(a)    A Named Partner has or had a proprietary or managerial interest; and
(b)    One or more individuals having a proprietary or managerial interest in the entity and who were employees of Legacy Partners Commercial, Inc., Legacy Partners Residential, Inc. or any predecessor or successor thereof when the entity was formed.

"**Named Partner**" shall refer to and include those persons, individually or as trustee, who are in business with a Named Insured and is who so designated by Preston Butcher or Legacy Partners, Inc., These shall include, without limitation, the following:

| | |
|---|---|
| Preston Butcher | Edgar Thrift |
| Barry DiRaimondo | Dean Henry |
| Gary Rossi | Stuart Leeder. |

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to   Legacy Partners, Inc.

By    Clarendon America Insurance Company                          , and is effective

From    6/14/2004      to    6/1/2005        (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

72

THIS ENDOR⬤   NT CHANGES THE POLICY. PLEAS⬤   D IT CAREFULLY

## NOTICE OF OCCURRENCE

Failure of any agent, servant or employee of the **Insured** to notify the Company of any **Occurrence** of which he/she has knowledge shall not invalidate the insurance afforded by this policy for other **Insureds** hereunder or for **You**.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to   Legacy Partners, Inc.

By    Clarendon America Insurance Company                          , and is effective

From    6/14/2004      to    6/1/2005      (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

Notice of Occurrence

73

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## PENDING AND PRIOR LITIGATION EXCLUSION

This insurance does not apply to any liability resulting from a claim based upon or arising out of any **Occurrence** or circumstances likely to give rise to a claim that an **Insured** has knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to, any prior claim or **Occurrence.**

It is further agreed that this policy excludes all further claims arising from all pending or prior litigation as well as future claims arising out of said pending or prior litigation.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004      to   6/1/2005        (12:01 A.M. Standard Time)

Issued Date: 8/20/2004

Pending and Prior Litigation Exclusion                                                    Page 1 of 1

74

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# PRIMARY/NON-CONTRIBUTORY INSURANCE ENDORSEMENT

In consideration of an additional premium, it is hereby understood and agreed that Condition K. OTHER INSURANCE of SECTION VII – CONDITIONS is deleted in its entirety and replaced by the following:

K.  OTHER INSURANCE

1. The Insured shall pay from its own account all amounts within the **Retained Amount** as defined in this policy.

2. If there is any other insurance available to the Insured, which affords coverage in excess of any **Retained Amount** with respect to injury or damages to which this policy applies, whether on a primary, excess, contingent, extended reporting period, retroactive, or any other basis, this policy shall apply as excess of and not contribute with such other insurance. However, this provision does not apply to insurance, which is purchased by the **Named Insured** to be specifically in excess of the sum of any applicable **Retained Amount** and the Limits of Insurance afforded by this policy.

Notwithstanding the foregoing, the company agrees that such insurance as is afforded by this policy for the benefit of certificate holders included as persons insured shall be primary and non-contributing insurance, but only as respects a claim, loss or liability arising out of the **Insured's Work** or work on behalf of the **Named Insured** performed under a written contract between the **Named Insured** and the certificate holder that requires the **Named Insured** to maintain such primary and non-contributory insurance and to include the certificate holder as a person insured thereunder

**Additional Premium:** $Included

_____

Authorized Representative

_____

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                        , and is effective

From   6/14/2004        To  6/1/2005        (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

75

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

This policy does not provide coverage or defense with respect to claims, suits or awards for punitive or exemplary damages.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By  Clarendon America Insurance Company                , and is effective

From   6/14/2004    to   6/1/2005    (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

EL 23740                           Page 1 of 1                           2-04

76

THIS EN◼◼EMENT CHANGES THE POLICY. PL◼◼READ IT CAREFULLY

# RESIDENTIAL WORK EXCEPT APARTMENTS EXCLUSION

This insurance does not apply to any liability arising out of any "residential" work conducted by you.

As used in this exclusion "residential" is defined as single-family dwellings or homes, multiple family dwellings or homes, multi-unit residential subdivisions, tract homes, master planned residential communities, residential condominiums, residential townhouses and/or residential duplexes.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                          , and is effective

From   6/14/2004        to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

Residential Work Exclusion                    Page 1 of 1                              5-04

77

THIS ENDOR▮▮▮IT CHANGES THE POLICY. PLEAS▮▮▮ D IT CAREFULLY

## SERVICE OF SUIT ENDORSEMENT

We agree that if we fail to pay any amount claimed to be due under this Policy we will, at your request, submit to the jurisdiction of any court of competent jurisdiction in the United States of America and we will do whatever is necessary to give that Court jurisdiction, and all matters arising under this policy will be determined in accordance with the law and practice of that Court.

We also agree that Service of Process in that suit may be made upon William Robinson, CPCU, Senior Vice President, Clarendon National Insurance Company, 15373 Innovation Drive, Suite 365, San Diego, California 92128 and that we will abide by the final decision of such Court or by any Appellate Court in the event of an appeal.

The above named will accept service of process on behalf of the Company in any such suit, or on your request will give you a written undertaking to enter a general appearance on behalf of the Company if such suit is started.

And further, in accordance with the statutes of any state, territory, or district of the United States of America, we hereby designate the Superintendent, Director or Commissioner of Insurance or other officer specified in the statute as our true and lawful attorney upon whom may be serviced any lawful process in any action, suit or proceeding instituted by you or on your behalf arising out of this contract of insurance, and we hereby designate the above named William Huff as the person to whom the said officer is authorized to mail such process.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                      , and is effective

From   6/14/2004   to   6/1/2005   (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

78

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

## TERRORISM EXCLUSION
## WITH AN EXCEPTION FOR CERTIFIED ACTS OF TERRORISM;
## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This insurance does not apply in any way to any occurrence, claim, injury or damage caused by, contributed to or in any way arising directly or indirectly as a result of or in connection with terrorism that is not a **certified act of terrorism** including, but not limited to, any contemporaneous or ensuing injury or damage caused by fire, looting or theft.

For the purposes of this endorsement, **terrorism** means the use or threatened use of force or violence against persons or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

For the purposes of this endorsement, a **certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a **certified act of terrorism**:

   a. The act resulted in aggregate losses in excess of $5 million; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more **certified acts of terrorism**, we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                , and is effective

From   6/14/2004     to   6/1/2005     (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

| EL 24033 | Page 1 of 1 | 2-04 |

79

THIS ENDORSE●NT CHANGES THE POLICY. PLEASE ●D IT CAREFULLY

## UNINTENTIONAL ERRORS AND OMISSIONS

It is agreed that the Terms and Conditions of this Policy are amended as follows:

Any unintentional error or omission in the description of or failure to completely describe any hazards or premises or operations existing as of the inception date of this policy will not invalidate or affect this insurance. However, the Insured must report such error or omission to the Company as soon as practicable after its discovery.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to   Legacy Partners, Inc.

By    Clarendon America Insurance Company                , and is effective

From    6/14/2004       To  6/1/2005      (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

80

THIS ENDORS████IT CHANGES THE POLICY.  PLEASE████IT CAREFULLY

## WAIVER OF SUBROGATION

Permission is expressly granted to the first **Named Insured** to waive any right of subrogation against any person or organization, provided such waiver is executed in writing and reported to the Company prior to any occurrence giving rise to claims hereunder.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to   Legacy Partners, Inc.

By    Clarendon America Insurance Company                          , and is effective

From   6/14/2004      To  6/1/2005       (12:01 A.M. Standard Time)

Issue Date: 8/20/2004

Waiver of Subrogation                                                           Page 1 of 1

THIS END⬤⬤MENT CHANGES THE POLICY. PLE⬤⬤EAD IT CAREFULLY

# TERMS AND CONDITIONS AMENDATORY ENDORSEMENT

ENDORSEMENT 1

It is agreed that the Terms and Conditions of this Policy are amended as follows:

The LIMITS OF INSURANCE on the Declarations Page is amended as follows:

**LIMITS OF INSURANCE:**

| | |
|---|---|
| General Aggregate, Per Location, Per Project Limit: | $2,000,000 |
| Products/Completed Operations Aggregate Limit: | $2,000,000 |
| Each Occurrence Combined Single Limit: | $1,000,000 |
| Personal & Advertising Injury Limit: | $1,000,000 |
| Employee Benefits Liability Per Employee and Aggregate Limit: (Part of General Aggregate) | $1,000,000 |
| Fire Damage Legal – Any One Fire Limit: (part of General Aggregate): | $50,000 |
| Medical Payments (part of General Aggregate): | $5,000 |

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004     to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date: 11/23/2004

82

THIS ENDO ⬤ MENT CHANGES THE POLICY. PLEA ⬤ EAD IT CAREFULLY

# TERMS AND CONDITIONS AMENDATORY ENDORSEMENT

ENDORSEMENT 2

It is agreed that the Terms and Conditions of this Policy are amended as follows:

SECTION II – **LIMITS OF INSURANCE** of the policy is amended by adding E. as follows:

E.     Subject to D above, the Medical Payments Limits is the most we will pay for all Medical Expense because of **Bodily Injury** sustained by any one person.

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                   , and is effective

From   6/14/2004      to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date:  11/23/2004

| EL 24000 | Page 1 of 1 | 2-04 |
|---|---|---|



## CLARENDON AMERICA INSURANCE COMPANY

In Witness Whereof, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Dr. Detlef Steiner, President                    Gary Ketels, Secretary

CA 019                                                                                      11 01

84

# CALIFORNIA NOTICE

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR SURPLUS LINE" INSURERS.

2. THE INSURERE IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR SURPLUS LINE BROKER, OR CONTACT THE CAIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.



*hilb rogal & hobbs*

① scan
② file w/policy

1825 South Grant Street
Suite 700
San Mateo, CA 94402
☎ 650-358-7972
🖨 650-571-5983
🖳 www.hrh.com

March 15, 2005

Thomas J. Wright
Vice President Risk Management
Legacy Partners, Inc.
4000 E. Third Avenue, Suite 600
Foster City, CA 94404

RE:   *Casualty Program*
      *Policy Term: June 14, 2004 to June 1, 2005*
      *General Liability*
      Clarendon America Insurance Company Policy #XSR00410538

Dear Tom,

I am enclosing an endorsement to the captioned policy which changes the TPA from McLarens Young to Vericlaim. The prior endorsement which added McLarens Young is also cancelled.

The endorsement should simply be filed with your policy.

Please be sure to contact me if you have any question concerning this matter.

Sincerely,

Joan D. Edwards, CPCU, ARM
Vice President

86

THIS END●MENT CHANGES THE POLICY. PLE●●READ IT CAREFULLY

## TERMS AND CONDITIONS AMENDATORY ENDORSEMENT

ENDORSEMENT 4

It is agreed that the Terms and Conditions of this Policy are amended as follows:

Endorsement 3 is deleted in its entirety and replaced with Endorsement 4:

The **SELF-INSURED CLAIMS SERVICING ORGANIZATION** is amended as follows:

VeriClaim                               Contact Person:        Arelisa Williams
233 South Wacker Drive                  Telephone:             312-559-4817
Suite 2420                              Fax:                   312-454-1588
Chicago, Illinois   60606               E-Mail Address:        awilliams@vericlaiminc.com

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number    XSR00410538

Issued to  Legacy Partners, Inc.

By   Clarendon America Insurance Company                    , and is effective

From   6/14/2004        to   6/1/2005        (12:01 A.M. Standard Time)

Issue Date:  3/4/2005

EL 24000                           Page 1 of 1                              2-04

87

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# PRIMARY/NON-CONTRIBUTORY INSURANCE ENDORSEMENT

In consideration of an additional premium, it is hereby understood and agreed that Condition K. OTHER INSURANCE of SECTION VII – CONDITIONS is deleted in its entirety and replaced by the following:

K.  OTHER INSURANCE

1.  The Insured shall pay from its own account all amounts within the **Retained Amount** as defined in this policy.

2.  If there is any other insurance available to the Insured, which affords coverage in excess of any Retained Amount with respect to injury or damages to which this policy applies, whether on a primary, excess, contingent, extended reporting period, retroactive, or any other basis, this policy shall apply as excess of and not contribute with such other insurance.  However, this provision does not apply to insurance, which is purchased by the Named Insured to be specifically in excess of the sum of any applicable Retained Amount and the Limits of Insurance afforded by this policy.

Notwithstanding the foregoing, the company agrees that such insurance as is afforded by this policy for the benefit of certificate holders included as persons insured shall be primary and non-contributing insurance; but only as respects a claim, loss or liability arising out of the Insured's Work or work on behalf of the Named Insured performed under a written contract between the Named Insured and the certificate holder that requires the Named Insured to maintain such primary and non-contributory insurance and to include the certificate holder as a person insured thereunder

**Additional Premium:  $Included**

_(signature)_

_____

Authorized Representative

All other Terms and Conditions of this Policy remain unchanged.

This endorsement forms a part of Policy Number   XSR00410538

Issued to   Legacy Partners, Inc.

By   Clarendon America Insurance Company                              , and is effective

From    6/14/2004          To  6/1/2005         (12:01 A.M. Standard Time)

Issue Date:  8/20/2004

88

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1055 West Seventh Street, 29th Floor, Los Angeles, California 90017-2547.

    On May 22, 2008, I served the foregoing document described as **NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT; DEMAND FOR JURY TRIAL** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

BY MAIL AS FOLLOWS:

    I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    Executed on May 22, 2008, at Los Angeles, California.

☒    (Federal)    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

MARTHA M. SUNIGA

LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 489-3222

F:\CASE\TIGIN.2721\SERVICE\POS.MMS.FEDERAL.wpd

PROOF OF SERVICE

# SERVICE LIST

1

2

3  Kirk A. Pasich, Esq.
   Susan Page White, Esq.
4  Dickstein Shapiro LLP
   2049 Century Park East, Suite 700
5  Los Angeles, CA 90067
   Tel: (310) 772-8300
6  Fax: (310) 772-8301

7  Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOS ANGELES, CALIFORNIA 90017-2547
TELEPHONE (213) 460-3222

F:\CASE\TIGIN.2721\SERVICE\POS.MMS FEDERAL.wpd

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

FILE BY F **FILED**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I. (a) PLAINTIFFS**
LEGACY PARTNERS, INC., a Delaware corporation,

**DEFENDANTS**
CLARENDON AMERIC... and
DOES 1 THROUGH 3... FCL

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
                                          DEPUTY

'08 CV 0920 BTM CAB

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF:
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER):
KIRK A. PASICH, ESQ.
DICKSTEIN SHAPIRO LLP
2049 CENTURY PARK EAST, SUITE 700
Los Angeles, CA 90067
(310) 772-8300

ATTORNEYS (IF KNOWN)
KEVIN R. WARREN, #242238
HARRINGTON, FOXX, DUBROW & CANTER, LLP
1055 West Seventh Street, 29th Floor
Los Angeles, CA 90017
(213) 489-3222

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR
(For Diversity Cases Only) PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) DIVERSITY ACTION UNDER 28 U.S.C. SECTION 1332, STATING CAUSES OF ACTION FOR BREACH OF CONTRACT AND TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

**VI. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removal from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23
DEMAND $ 850,000
CHECK YES only if demanded in complaint.
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S)** (See instructions):
IF ANY
JUDGE
Docket Number

DATE 5-23-08
SIGNATURE OF ATTORNEY OF RECORD

**ORIGINAL**

Rec# 151826  $350  MS 5/23

:ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

# UNITED STATES
# DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

# # 151228 — MS

# May 23, 2008
# 12:50:04

# Civ Fil Non-Pris
USAO #.: 08-CV-0920  CIVIL FILING
Judge..: BARRY T MOSKOWITZ
Amount.:                    $350.00 CK
Check#.: BC048190

# Total-> $350.00

FROM: LEGACY PARTNERS, INC
      VS. CLARENDON AMERICAN INS CO.
      CIVIL CASE FILING