1  Kirk A. Pasich (State Bar No. 94242)
2  Susan Page White (State Bar No. 137125)
   DICKSTEIN SHAPIRO LLP
3  2049 Century Park East, Suite 700
   Los Angeles, CA 90067
4  Telephone:  (310) 772-8300
   Facsimile:   (310) 772-8301
5
6  Attorneys for Plaintiff

7

8              **UNITED STATES DISTRICT COURT**

9         **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | LEGACY PARTNERS, INC, a Delaware | **CASE NO.: CV0920BTMCAB**
12 | corporation, |
   |              | The Honorable Barry Ted Moskowitz
13 |        Plaintiff, |
   | v.           | **OPPOSITION OF PLAINTIFF**
14 |              | **LEGACY PARTNERS, INC. TO**
   | CLARENDON AMERICAN INSURANCE | **MOTION TO DISMISS**
15 | COMPANY, and DOES 1 through 10, | **COMPLAINT OF DEFENDANT**
   |              | **CLARENDON AMERICA**
16 |        Defendants. | **INSURANCE COMPANY**
17 |              |
18 |              | Hearing Date:    July 18, 2008
   |              | Hearing Time:    11:00 a.m.
19 |              | Room:            5
20

21

22

23

24

25

26

27

# TABLE OF CONTENTS

**PAGES**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.   STATEMENT OF FACTS ........................................................................... 4

    A.    THE INSURANCE POLICY ......................................................... 4

    B.    THE *WELLINGTON* LAWSUIT ................................................ 5

    C.    CLARENDON'S DENIAL OF COVERAGE .............................. 6

III.  CLARENDON HAS NOT SATISFIED THE STANDARDS
      APPLICABLE TO A MOTION TO DISMISS ................................... 8

    A.    THE FEDERAL RULES PROVIDE FOR LIBERAL PLEADING
            OF CLAIMS ................................................................................... 8

    B.    CLARENDON'S DUTY TO PAY DEFENSE COSTS ............. 9

IV.   CLARENDON HAS NOT MET ITS BURDEN OF PROVING THAT
      THERE IS NO POTENTIAL FOR COVERAGE ............................. 11

    A.    THE *WELLINGTON* LAWSUIT SUFFICIENTLY ALLEGES AN
            "OCCURRENCE" FOR PROPERTY DAMAGE COVERAGE ........... 11

    B.    THE TWO CASES RELIED UPON BY CLARENDON ARE
            EASILY DISTINGUISHABLE AND DO NOT SUPPORT
            CLARENDON'S MOTION ................................................... 16

    C.    EVEN IF THE ALLEGED CONDUCT WAS INTENTIONAL,
            CLARENDON HAS NOT DEMONSTRATED THAT LEGACY
            ACTED INTENTIONALLY ................................................... 18

V.    CLARENDON FAILS TO EVEN ADDRESS THAT THE
      *WELLINGTON* LAWSUIT ALLEGES AN "OCCURRENCE" UNDER
      THE PERSONAL INJURY COVERAGE. ........................................ 19

VI.   CLARENDON HAS WAIVED, OR IS ESTOPPED FROM
      ASSERTING, THAT IT HAS NO DUTY TO PAY DEFENSE COSTS
      LEGACY FOR THE *WELLINGTON* LAWSUIT. ............................. 20

VII.  LEGACY'S BAD FAITH CLAIM IS SUFFICIENTLY PLED ....................... 22

i

VIII.  CONCLUSION ................................................................................................ 24

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS**
**OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4

<u>Cases</u>

5

*Adams v. Allstate Ins. Co.,*
    187 F. Supp. 2d 1207 (C.D. Cal. 2002) ..................................................23

6

7

*Adams v. Allstate Ins. Co.,*
    187 F. Supp. 2d 1219 (C.D. Cal. 2002) ..................................................23

8

*Anthem Elecs., Inc. v. Pac. Employers Ins. Co.,*
    302 F.3d 1049 (9th Cir. 2002) ...............................................................9

9

10

*Austero v. Nat'l Cas. Co.,*
    84 Cal. App. 3d 1, 148 Cal. Rptr. 653 (1978) .......................................23

11

12

*Brown v. Brown,*
    274 Cal. App. 2d 178, 82 Cal. Rptr. 238 (1969) ...................................21

13

14

*Buss v. Superior Court,*
    16 Cal. 4th 35, 65 Cal. Rptr. 2d 366 (1997) .........................................10

15

16

*Cheek v. Williams-McWilliams Co.,*
    697 F.2d 649 (5th Cir. 1983) ................................................................11

17

18

*CNA Cas. v. Seaboard Sur. Co.,*
    176 Cal. App. 3d 598, 222 Cal. Rptr. 276 (1986) .................................10

19

*Comunale v. Traders & Gen. Ins. Co.,*
    50 Cal. 2d 654, 328 P.2d 198 (1958) ....................................................22

20

21

*Conley v. Gibson,*
    355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ...............................8, 9

22

23

*Dart Industries Inc. v. Liberty Mutual Insurance Co.,*
    484 F.2d 1295 (1973) ...........................................................................18

24

25

*David Kleis, Inc. v. Superior Court,*
    37 Cal. App. 4th 1035, 44 Cal. Rptr. 2d 181 (1995) .............................17

26

27

*Doe v. U.S.,*
    58 F.3d 494 (9th Cir. 1995) ...................................................................9

iii

*Downey Venture v. LMI Insurance Co.,*
    66 Cal. App. 4th 478, 78 Cal. Rptr. 2d 142 (1998) ...........................................19

*Economy Lumber Co. of Oakland, Inc. v. Ins. Co. of N. Am.,*
    157 Cal. App. 3d 641, 204 Cal. Rptr. 135 (1984) ............................................14

*Egan v. Mutual of Omaha Ins. Co.,*
    24 Cal. 3d 809, 169 Cal. Rptr. 691 (1979) ...............................................7, 22, 23

*Fireman's Fund Ins. Co. v. City of Turlock,*
    170 Cal. App. 3d 988, 216 Cal. Rptr. 796 (1985) ...........................................19

*Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.,*
    51 Cal. 2d 558, 334 P.2d 881 (1959)........................................................13, 14, 15

*Gray v. Zurich Ins. Co.,*
    65 Cal. 2d, 54 Cal. Rptr. 104 (1966) ...................................................9, 10, 14

*Gruenberg v. Aetna Ins. Co.,*
    9 Cal. 3d 566, 108 Cal. Rptr. 480 (1973) .......................................................23

*Guebara v. Allstate Ins. Co.,*
    237 F.3d 987 (9th Cir. 2001) .........................................................................23

*Hogan v. Midland National Insurance Co.,*
    3 Cal. 3d 553, 91 Cal. Rptr. 153 (1970) ........................................................14

*Horace Mann Ins. Co. v. Barbara B.,*
    4 Cal. 4th 1076, 17 Cal. Rptr. 2d 210 (1993) .........................................9, 11, 17

*Interinsurance Exch. v. Flores,*
    45 Cal. App. 4th 661, 53 Cal. Rptr. 2d 18 (1996) ...........................................13

*J.C. Penney Casualty Insurance Co. v. M.K.,*
    52 Cal. 3d 1009, 278 Cal. Rptr. 64 (1991) ....................................................17

*Lyons v. Fire Ins. Exch.,*
    161 Cal. App. 4th 880, 74 Cal. Rptr. 3d 649 (2008) ...................................15, 16

*Merced Mut. Ins. Co. v. Mendez,*
    213 Cal. App. 3d 41, 261 Cal. Rptr. 273 (1989) ............................................12

*Meyer v. Pac. Employers Ins. Co.,*
    233 Cal. App. 2d 321, 43 Cal. Rptr. 542 (1965) ............................................13

iv

*Miller v. Elite Ins. Co.,*
    100 Cal. App. 3d 739, 161 Cal. Rptr. 322 (1980) ...............................................21

*Montrose Chem. Corp. v. Superior Court,*
    6 Cal. 4th 287, 24 Cal. Rptr. 2d 467 (1993) ...................................................9, 11

*Mullen v. Glens Falls Ins. Co.,*
    73 Cal. App. 3d 163, 140 Cal. Rptr. 605 (1977) ...............................................14

*Murphy v. Allstate Ins. Co.,*
    17 Cal. 3d 937, 132 Cal. Rptr. 424 (1976) ...................................................22, 23

*Murray v. State Farm Fire & Cas. Co.,*
    219 Cal. App. 3d 58, 268 Cal. Rptr. 33 (1990) .................................................24

*Neal v. Farmers Ins. Exch.,*
    21 Cal. 3d 910, 148 Cal. Rptr. 389 (1978) .......................................................22

*Olympic Club v. Those Interested Underwriters at Lloyd's London,*
    991 F.2d 497 (9th Cir. 1993) ..........................................................................11

*Quan v. Truck Insurance Exchange,*
    67 Cal. App. 4th 583, 79 Cal. Rptr. 2d 134 (1998) .....................................16, 17

*Scheuer v. Rhodes,*
    416 U.S. 232, 94 S.Ct. 1683, 40 L. Ed. 2d 90 (1974) ......................................8, 9

*Scottsdale Ins. Co. v. MV Transp.,*
    36 Cal. 4th 643, 31 Cal. Rptr. 3d 147 (2005) ...................................................10

*State Farm Fire & Casualty Co. v. Superior Court,*
    --- Cal. App. 4th ---, No. B202768, 2008 WL 2524668 (Cal. App. 2 Dist.
    June 26, 2008)..........................................................................2, 3, 12, 17

*Uhrich v. State Farm Fire & Casualty Co.,*
    109 Cal. App. 4th 598, 135 Cal. Rptr. 2d 131 (2003) ..................................16, 18

*Vandenberg v. Superior Court,*
    21 Cal. 4th 815, 88 Cal. Rptr. 2d 366 (1999) ...................................................19

*Vargas v. Hudson County Bd.,*
    949 F.2d 665 (3d Cir. 1991) ............................................................................20

*Waller v. Truck Ins. Exch., Inc.,*
    11 Cal. 4th 1, 44 Cal. Rptr. 2d 370 (1995) .................................................10, 21

*Zinermon v. Burch,*
    494 U.S. 113, 110 S.Ct. 975, 108 L. Ed. 2d 100 (1990) ...............................9, 24

*Zurich Ins. Co. v. Killer Music, Inc.,*
    998 F.2d 674 (9th Cir. 1993) ...............................................................................14

*Zurich Ins. Co. v. Peterson,*
    188 Cal. App. 3d 438, 232 Cal. Rptr. 807 (1986) ..............................................20

<u>Statutes</u>

Insurance Code § 533 .......................................................................................18, 19

<u>Other Authorities</u>

Cal. Code Regs. Title 10, § 2695.7(b) .....................................................................21

Fed. R. Civ. P. 8 ........................................................................................................8

Fed. R. Civ. P. 8(a) ...................................................................................................8

Fed. R. Civ. P. 8(d)(1) & (e)......................................................................................8

Rule 12(b)(6)..............................................................................................................8

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS
OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Clarendon America Insurance Company asks this Court to rule that its insured, Legacy Partners, Inc. is not entitled to recover any of the $500,000 in attorneys' fees and costs it incurred defending a lawsuit for "property damage" and "personal injury," as those terms are defined in its policy or any of the $350,000 settlement it paid to resolve that lawsuit. The lawsuit, *Wellington Group, LLC v. State of California Dept. of Transportation, et al.,* San Diego Superior Court, Case No. GIC 837898 (the "*Wellington* lawsuit"), involves claims that Legacy was negligent in connection with repair work it performed on Wellington's property, that it negligently trespassed, and that its conduct constituted a nuisance on Wellington's property, all of which resulted in "property damage." Specifically, Wellington alleged that Legacy trespassed onto its property to make repairs to a retaining wall that was contiguous to the Wellington property. Wellington further alleged that as part of that trespass, Legacy "failed to exercise reasonable care and skill" in undertaking the construction and repair of the retaining wall. Wellington also alleged Legacy caused damage to the property by negligently placing heavy equipment and vehicles onsite and by removing portions of the storm and pollution work the previously had been performed by Wellington.

Wellington also alleged claims for "personal injury" in connection with the alleged trespass and nuisance claims against Legacy. Wellington alleged that Legacy negligently trespassed on the property despite obtaining an Encroachment Permit from the Caltrans. Wellington further alleged that Legacy's conduct interfered with, physically intruded upon, and impeded Wellington's use and enjoyment of its property, which constituted a nuisance.

However, Clarendon does not address in its motion Legacy's claims under the personal injury coverage of the Policy. Therefore, on this basis alone, this Court must deny Clarendon's motion.

DOCSLA-31990v02

1    Clarendon's sole argument in support of its motion to dismiss is its erroneous

2    claim that Legacy has not sufficiently alleged an "occurrence" in its complaint under

3    the property damage coverage.  The Clarendon policy covers property damage caused

4    by an "occurrence," which is defined as an  "accident, including continuous and

5    repeated exposure to substantially the same harmful conditions."  Clarendon, in direct

6    conflict with California law, claims that because a Legacy employee intentionally

7    went on to Wellington's property and repaired the retaining wall, Legacy did not

8    sufficiently plead an "accident."

9    However, contrary to Clarendon's claims, the allegations in the *Wellington*

10   lawsuit clearly trigger Clarendon's duty to pay defense costs and to indemnify under

11   two separate coverages – the coverages for "property damage" and for "personal

12   injury."  Indeed, Clarendon's motion must be denied for the following reasons:

13   First, Legacy has stated a claim upon which relief can be granted.  Dismissal is

14   proper only when it is absolutely clear that a plaintiff cannot prove any set of facts

15   consistent with the allegations that would support the claimed relief.  That is not the

16   case here, particularly when Clarendon's duty to pay defense costs is triggered by the

17   mere potential for coverage under its Policy.

18   Second, Clarendon is wrong that the *Wellington* lawsuit did not allege an

19   "occurrence" for property damage coverage.  As stated above, an "occurrence" is

20   defined as an "accident" for the property damage coverage.  However, as the

21   California Court of Appeal recently confirmed in *State Farm Fire & Casualty Co. v.*

22   *Superior Court*, --- Cal. App. 4th ---, No. B202768, 2008 WL 2524668 (Cal. App. 2

23   Dist. June 26, 2008), California law holds that even if the insured's conduct is

24   "intentional," it is still an "accident" for insurance purposes if not all of the acts, the

25   manner in which they were done, and the objective accomplished happen exactly as

26   the insured intends.  *Id.* at *6 (insured intentionally throwing claimant into swimming

27   pool to get him wet, but mistakenly does not throw him hard enough and claimant

2

1   lands on pool's step is held to be an accident because insured did not intend all of the

2   acts in the causal series of events leading to claimant's injury).  Here, Legacy did not

3   intend when entering Wellington's property that any of its repair and construction

4   work would be performed negligently or cause damage.  Similarly, Legacy, when

5   placing its equipment and vehicles on the property, did not know or intend that these

6   objects were of such a weight that they might cause damage to Wellington's property.

7   Therefore, because not all Legacy's acts, or how these acts were accomplished, or

8   Legacy's objectives happened as Legacy intended, these events constitute accidents.

9   *Id.*

10          Third, Clarendon fails to address in its motion that Legacy has sufficiently pled

11   that Wellington alleged an "occurrence" under the personal injury coverage of the

12   Policy.  An "occurrence" under personal injury coverage is defined as "an act or

13   offense, including continuous or repeated exposure to the same injurious material."

14   Thus, under this coverage, an "accident" is not required.  In fact, as shown below, an

15   "offense" includes intentional conduct.  Here, the *Wellington* lawsuit sought recovery

16   for "personal injury," which is defined in the Policy to include: "wrongful entry into,

17   or eviction of a person from, or invasion of the right of private occupancy of a room,

18   dwelling or premises" in connection with its claims against Legacy for trespass and

19   nuisance.  Indeed, Wellington alleged that Legacy trespassed onto its property and that

20   Legacy's conduct interfered with and physically intruded upon Wellington's use and

21   enjoyment of its property, which constituted a nuisance.  Therefore, due to

22   Clarendon's failure to raise this ground for coverage in its motion, dismissal of

23   Legacy's Complaint is improper.

24          Fourth, Clarendon has waived, or is estopped from asserting, that no "accident"

25   has been alleged in the *Wellington* lawsuit.  When Legacy gave Clarendon notice of

26   *Wellington*, Clarendon failed to argue that no "accident" is alleged in the *Wellington*

27   lawsuit.  To the contrary, Clarendon initially advised that it would be providing a

1  defense to Legacy.  Legacy relied on this to its detriment.  And, it was not until a few

2  months later that Clarendon then reversed its position and denied coverage to Legacy.

3  Clarendon's failure to timely specify its reasons for not providing coverage for an

4  insured's claim waives all defenses that a reasonable investigation would have

5  revealed.  This conduct also results in equitably estopping Clarendon from belatedly

6  identifying reasons to deny coverage to Legacy.

7        Fifth, Clarendon's argument about the bad faith claim is wrong.  Clarendon

8  cannot show that its Policy does not potentially provide coverage to Legacy, so it

9  cannot escape its bad faith on that basis.  And, even if Clarendon had made a

10  reasonable coverage decision, this does not immunize it from liability for its other bad

11  faith conduct.  Furthermore, the Complaint is replete with allegations of Clarendon's

12  bad faith conduct.

13  **II.   STATEMENT OF FACTS**

14        **A.   THE INSURANCE POLICY**

15        Clarendon sold Legacy commercial general liability ("CGL") coverage from at

16  least June 14, 2004, to June 14, 2005.  Complaint, ¶ 4, & Exhibit A.  The Policy

17  provides $1,000,000 in coverage per occurrence, with a retained limit of $100,000 per

18  occurrence.  The Policy also provides Legacy with $1,000,000 in personal injury

19  coverage.  In addition, the Policy obligates Clarendon to pay the defense fees and

20  costs of Legacy against potentially covered claims.  *Id.*, ¶¶ 5-8 & Ex. A.

21        Clarendon's Policy provides Legacy with the following coverage:

22                  Subject to the other provisions of this policy, the Company

23                  will pay on behalf of the Insured that portion of the Ultimate

24                  Net Loss, in excess of the Retained Amount, which the

25                  Insured has become legally obligated to pay as damages and

26                  related Claims Expense because of Bodily Injury, Property

27

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS
OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02

1               Damage, Personal Injury or Advertising Injury to which this

2               insurance applies.

3 Complaint, ¶ 6 & Ex. A, § V, ¶ U.

4     The Policy defines "Property Damage" to mean: "[p]hysical injury to tangible

5 property, including all resulting loss of use of that property" or "loss of use of tangible

6 property that is not physically injured." *Id.*, ¶ 9 & Ex. A, § V, ¶ R.

7     The Policy defines "Personal Injury" to mean:

8               Injury, other than Bodily Injury, arising out of one or more

9               of the following offenses:

10               * * *

11            3.     Wrongful entry into, or eviction of a person from, or

12                     invasion of the right of private occupancy of a room,

13                     dwelling or premises that the person occupies with the

14                     permission of or on behalf of its owner, landlord or

15                     lessor.

16 *Id.*, ¶ 11 & Ex. A, § V, ¶ O.

17     "Occurrence" is defined in the Policy as follows:

18               an accident, including continuous or repeated exposure to

19               substantially the same general harmful conditions.

20               However, with respect to Personal Injury and Advertising

21               Injury, Occurrence means an act or offense, including

22               continuous or repeated exposure to the same injurious

23               material.

24 *Id.*, ¶ 10 & Ex. A, § V, ¶ N.

25     **B.**    **THE *WELLINGTON* LAWSUIT**

26     Legacy reasonably expected that the Policy would cover just the type of

27 situation it faced here–a lawsuit alleging property damage and personal injury.  In the

DOCSLA-31990v02

1    *Wellington* lawsuit, Wellington claimed that Legacy was negligent when it entered

2    Wellington's property to perform construction repair work to a retaining wall that was

3    contiguous to the Wellington property.  Indeed, Wellington alleged that Legacy was

4    negligent by failing to exercise reasonable care and skill in, among other things: (a)

5    constructing, repairing, designing, inspecting, and cleaning up the retaining wall; (b)

6    removing the storm and pollution work that Wellington previously had performed as

7    part of its development of the property; (c) placing heavy construction equipment,

8    materials and vehicles on the Wellington property; and (d) designing and determining

9    the subterranean tie-back construction.  *Id.*, ¶¶ 15-18 & Ex. B ¶¶ 37, 38, 42, 117-119.

10        Wellington also alleged that by entering onto the Wellington property, Legacy

11   committed negligent trespass.  Wellington alleged that despite having obtained an

12   Encroachment Permit from Caltrans, Legacy negligently trespassed because Caltrans

13   exceeded its authority when issuing the Permit.  Wellington further alleged that the

14   trespass included Legacy's installation of subterranean tie-backs onto the Wellington

15   property, which precluded Wellington from obtaining its "highest and best use" of its

16   property.  *Id.*, Ex. B ¶¶ 63-68.

17        Wellington further alleged that Legacy's conduct has interfered, physically

18   intruded upon, and impeded Wellington's use and enjoyment of its property and the

19   condition of the property, which constituted a nuisance.  *Id.*, Ex B, ¶¶ 106-114.

20   **C.   CLARENDON'S DENIAL OF COVERAGE**

21        Legacy timely notified Clarendon of the *Wellington* lawsuit on July 9, 2005.

22   *Id.*, ¶ 19.  After receiving this notice, on August 31, 2005, Clarendon's representative

23   initially acknowledged coverage.  *Id.*, ¶¶ 20-21.  As a result, in good faith and in

24   reliance that Clarendon had agreed to accept the tender of defense costs, Legacy

25   forwarded to Clarendon attorney-client privileged billing invoices from defense

26   counsel.  *Id.*, ¶ 21.  Legacy also kept Clarendon apprised of upcoming mediations with

27   Wellington.  *Id.*

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS
OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02

1    Then, six weeks after agreeing to accept the defense in connection with the

2    *Wellington* lawsuit, Clarendon reversed its coverage decision and refused coverage to

3    Legacy. *Id.*, ¶ 22. Clarendon denied coverage on the erroneous basis that the

4    allegations in the *Wellington* lawsuit did not constitute an "occurrence" as defined in

5    the Policy. Clarendon erroneously and unreasonably concluded that intentional

6    conduct, even if resulting in unforeseen consequences, was not an "accident" and was

7    not covered under the Policy.

8    However, Legacy already had relied on Clarendon's previous acceptance of

9    tender of defense costs, and had sent privileged defense counsel invoices to Clarendon

10   for payment. Accordingly, Clarendon has waived or is estopped from asserting that it

11   has no duty to reimburse Legacy's defense costs.

12   Moreover, Clarendon did not meet its duty to conduct a thorough investigation

13   into facts that might support Legacy's request for coverage. *See Egan v. Mutual of*

14   *Omaha Ins. Co.*, 24 Cal. 3d 809, 819, 169 Cal. Rptr. 691 (1979) ("it is essential that an

15   insurer fully inquire into possible bases that might support the insured's claim"). To

16   the contrary, with respect to the *Wellington* lawsuit, without doing any more than

17   reviewing the *Wellington* complaint, Clarendon advised Legacy that it was "not

18   covered" under the Policy based solely upon its claim that no "accident" took place,

19   despite the fact that Clarendon originally had agreed to pay defense costs to Legacy.

20   In sum, in denying coverage and in bringing this motion, Clarendon wrongfully

21   and unreasonably continues to assert grounds for denying coverage that it knows are

22   not supported by, and in fact are contrary to, the terms of the policy and California

23   law.

24

25

26

27

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS**
**OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**III.   CLARENDON HAS NOT SATISFIED THE STANDARDS APPLICABLE TO A MOTION TO DISMISS**

**A.   THE FEDERAL RULES PROVIDE FOR LIBERAL PLEADING OF CLAIMS**

Federal Rule of Civil Procedure 8 provides that a complaint shall contain

> (1) a short and plain statement of the grounds for the court's
> jurisdiction depends, . . . (2) a short and plain statement of
> the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sough, which may include relief
> in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).  It further specifies that "[e]ach allegation must be simple, concise, and direct" and that "pleadings must be construed so as to do justice."  Fed. R. Civ. P. 8(d)(1) & (e).

A court should dismiss an action under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  The liberal pleading standards of the federal rules mandate that the Court must view the complaint in the light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 40 L. Ed. 2d 90 (1974).  In fact,

> [w]hen a federal court reviews the sufficiency of a complaint
> . . . [t]he issue is not whether a plaintiff will ultimately
> prevail but whether the claimant is entitled to offer evidence
> to support the claims.  Indeed it may appear on the face of
> the pleadings that recovery is very remote and unlikely but
> that is not the test.

1    *Id.* at 236.  This Court also must accept as true all factual allegations in the complaint

2    and draw all reasonable inferences in favor of the plaintiff.  *Zinermon v. Burch*, 494

3    U.S. 113, 118, 110 S.Ct. 975, 108 L. Ed. 2d 100 (1990).

4        Clarendon certainly has not shown "beyond [a] doubt that [plaintiff] can prove

5    no set of facts in support of [its] claim which would entitle [it] to relief."  *Conley*, 355

6    U.S. at 45-46.  Further, Legacy should not be denied leave to amend the complaint

7    because Clarendon has not established that any defects in the complaint "could not

8    possibly be cured by the allegation of other facts."  *Doe v. U.S.*, 58 F.3d 494, 497 (9th

9    Cir. 1995).

10        **B.    CLARENDON'S DUTY TO PAY DEFENSE COSTS**

11        When allegations in the underlying lawsuit *potentially* fall within the policy's

12    coverage, there is a duty to defend or pay defense costs.  *See, e.g., Anthem Elecs., Inc.*

13    *v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002); *Montrose Chem.*

14    *Corp. v. Superior Court*, 6 Cal. 4th 287, 295-96, 24 Cal. Rptr. 2d 467 (1993).

15    "Imposition of an immediate duty to defend is necessary to afford the insured what it

16    is entitled to:  the full protection of a defense on its behalf. . . .  California courts have

17    been consistently solicitous of insureds' expectations on this score."  *Montrose,* 6 Cal.

18    4th at 295-96.  Moreover, if any allegation in a complaint potentially is covered, an

19    insurer must defend the entire action.  *See Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.

20    4th 1076, 1084, 17 Cal. Rptr. 2d 210 (1993).  An insurer is excused from its duty to

.21   defend only "'if the third party complaint *can by no conceivable theory raise a single*

22    *issue which could bring it within the policy coverage.*'"  *Montrose,* 6 Cal. 4th at 300

23    (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d, 263, 276 n.15, 54 Cal. Rptr. 104 (1966)).

24    All that is required to trigger the insurer's duty to defend is "a bare 'potential' or

25    'possibility' of coverage as the trigger of a defense duty."  *Id.*

26        Thus, to avoid its duty to pay defense costs Clarendon must prove through

27    undisputed evidence the absence of *any* potential for coverage as to *any* issue in the

1   *Wellington* lawsuit.  In making its determination as to whether there is a duty to pay

2   defense costs, Clarendon must look beyond the claim as phrased to determine whether

3   the facts underlying the claim potentially could support a covered claim.  *CNA Cas. v.*

4   *Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 605, 222 Cal. Rptr. 276 (1986) (potential

5   liability, suggested by facts alleged or otherwise available to insurer, determines duty

6   to defend).  Thus, "that the precise causes of action pled by the third-party complaint

7   may fall outside policy coverage does not excuse the duty to defend where, under the

8   facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be

9   amended to state a covered liability." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th

10   643, 654, 31 Cal. Rptr. 3d 147 (2005); *see also Waller v. Truck Ins. Exch., Inc.*, 11

11   Cal. 4th 1, 19, 44 Cal. Rptr. 2d 370 (1995) ("Facts extrinsic to the complaint give rise

12   to a duty to defend when they reveal a possibility that the claim may be covered by the

13   policy.").  And, even when the insured is unsuccessful in his defense and the insured

14   party recovers based on a finding of willful conduct by the insured, the duty to defend

15   does not dissolve.  *Gray*, 65 Cal. 2d at 277-78; *Buss v. Superior Court*, 16 Cal. 4th 35,

16   46, 65 Cal. Rptr. 2d 366 (1997) (duty to defend "is extinguished only prospectively

17   and not retroactively").

18       The California Supreme Court stated the applicable burdens of proof on an

19   insured and an insurer regarding the duty to defend:

20       To prevail, the insured must prove the existence of *a*

21       *potential for coverage*, while the insurer must establish *the*

22       *absence of any such potential.*  In other words, the insured

23       need only show that the underlying claim *may* fall within

24       policy coverage; the insurer must prove it *cannot.*  Facts

25       merely tending to show that the claim is not covered, or may

26       not be covered, but are insufficient to eliminate the

27       possibility that resultant damages (or the nature of the

10

1    action) will fall within the scope of coverage, therefore add

2    no weight to the scales.  Any seeming disparity in the

3    respective burdens merely reflects the substantive law.

4   *Montrose*, 6 Cal. 4th at 300.  Whenever there is a doubt as to whether the facts give

5   rise to a duty to defend, that doubt is to be resolved in favor of a defense obligation by

6   the insurer.  *Id.* at 299-300.  Indeed, the duty exists not only when the likelihood of

7   coverage is clear; but when coverage is dubious and may never develop.  *Id.*; *Horace*

8   *Mann*, 4 Cal. 4th at 1081 (duty to defend is broader than duty to indemnify and may

9   apply even in action where no damages are ultimately awarded).  This rule applies

10   regardless of whether the insurer has a duty to defend or a duty to pay defense costs.

11   *See, e.g., Cheek v. Williams-McWilliams Co.*, 697 F.2d 649, 653-54 (5th Cir. 1983)

12   ("potential for coverage" standard applies to policies obligating insurers to pay

13   defense costs"); *Olympic Club v. Those Interested Underwriters at Lloyd's London*,

14   991 F.2d 497, 503 (9th Cir. 1993) (defense duty when underlying complaint

15   "potentially seeks damages within the coverage").

16   **IV.    CLARENDON HAS NOT MET ITS BURDEN OF PROVING THAT**

17   **THERE IS NO POTENTIAL FOR COVERAGE**

18   **A.    THE *WELLINGTON* LAWSUIT SUFFICIENTLY ALLEGES AN**

19   **"OCCURRENCE" FOR PROPERTY DAMAGE COVERAGE**

20   Pursuant to Clarendon's Policy, Clarendon will pay that portion of Ultimate Net

21   Loss (which includes defense costs and settlements) that its insureds are legally

22   required to pay as damages for property damage caused by an occurrence.  Complaint,

23   Ex. A, § I, ¶¶ A. 1 & A.3.  Clarendon does not dispute that the *Wellington* lawsuit

24   alleges property damage against Legacy.  The Policy defines "occurrence" as an

25   "accident, including continuous or repeated exposure to substantially the same general

26   harmful conditions."  *Id.*, ¶ V, ¶ N & Ex. A, § V, ¶ N.

27

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS**
**OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02

1    In its motion, Clarendon argues that the claims against Legacy are not be

2  covered because the term "accident" in the Policy refers to the insured's intent to act,

3  rather than the insured's intent to harm.  According to Clarendon, because Legacy

4  intentionally entered Wellington's property and conducted the construction and

5  repairs, there simply can be no coverage.  Clarendon contends that an event may not

6  be deemed an "accident" if the insured intended the acts because "an intentional act is

7  not an 'accident' within the plain meaning of the word."

8    However, Clarendon is wrong.  Contrary to Clarendon's claims, the California

9  Court of Appeal recently confirmed in *State Farm Fire & Casualty Co. v. Superior*

10  *Court*, --- Cal. App. 4th ---, No. B202768, 2008 WL 2524668 (Cal. App. 2d Dist. Jun

11  26, 2008), that under California law even if the insured intended the acts, an accident

12  still exists if unintended or unexpected consequences result *or* if some unexpected,

13  independent, and unforeseen happening occurs that produces the damage.  *Id.* at *6.

14  Indeed, in *State Farm*, the court acknowledged that an "'accident' exists when any

15  aspect in the causal series of events leading to the injury or damage was unintended by

16  the insured and a matter of fortuity."  *Id.* (quoting *Merced Mut. Ins. Co. v. Mendez*,

17  213 Cal. App. 3d 41, 50, 261 Cal. Rptr. 273 (1989)).

18    In *State Farm*, the insured threw the claimant into a swimming pool intending

19  to get him wet.  However, the insured did not throw the claimant hard enough, and the

20  claimant landed on the pool's cement step and suffered injuries.  The claimant sued

21  the insured, who did not intend to hurt the claimant, for negligence.  *Id.* at *1.  State

22  Farm denied coverage, claiming that the insured's actions did not arise out of an

23  "occurrence," which was defined similarly to the Clarendon Policy as an "accident."

24  *Id.*[1]  The Court of Appeal held that State Farm had a duty to defend its insured

25

26

27  ───────────────

[1]  In *State Farm*, an "occurrence" was defined in the policy as "an accident, including exposure to conditions, which results in: [¶] a. bodily injury; or [¶] b. property damage."  *Id.*

12

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS**
**OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02

1  because he did not intend all of the acts in the causal series of events leading to the

2  claimant's injuries. *Id.* at *6. The court stated:

3         This event here was an accident because *not* all of the acts,

4         the manner in which they were done, and the objective

5         accomplished transpired exactly as [the insured] intended.

6  *Id.* at *4.

7      In so holding, the court recognized that the term accident has been used to refer

8  to the unintended or unexpected consequences of the act. *Id.* at * 4 (citing to

9  *Interinsurance Exch. v. Flores*, 45 Cal. App. 4th 661, 669, 53 Cal. Rptr. 2d 18 (1996);

10  *Meyer v. Pac. Employers Ins. Co.*, 233 Cal. App. 2d 321, 327, 43 Cal. Rptr. 542

11  (1965) (accident existed because although company intentionally drilled, there was no

12  evidence that it "intended or expected the vibrations which their operation set in

13  motion would cause damage to plaintiff's property"); and *Geddes & Smith, Inc. v. St.*

14  *Paul Mercury Indem. Co.*, 51 Cal. 2d 558, 563, 334 P.2d 881 (1959)). Thus, even

15  though the insured intended to push the claimant into the pool, he did not intend to

16  injure him, and therefore the event was an accident.

17      For example, in *Meyer*, the court focused on the consequences of a deliberate

18  act. While drilling a well, the drilling company caused the ground to vibrate, resulting

19  in damage to the neighbor's property. The *Meyer* court held that an "accident" existed

20  because even though the company intentionally drilled, there was no evidence that it

21  intended or expected the vibrations caused by the drilling to damage plaintiff's

22  property. *Id.* at 327.

23      Similarly, in a seminal property damage case, the California Supreme Court

24  confirmed that accident means an "unexpected, unforeseen, or undersigned happening

25  or consequence from either a known or unknown cause." *Geddes & Smith,* 51 Cal. 2d

26  558. Under this approach, "accidents" include unintended consequences of an

27  insured's intentional actions.

1    In *Geddes*, the insured was a building contractor who installed doors that later

2    failed. When installing the doors, the insured was unaware that they were defective.

3    And, of course, although the insured intentionally installed the doors, the insured had

4    no intention that they would later fail. The insured's policy provided coverage for

5    property damage caused by accident. The Court held that the door failures were

6    accidental. *Id.* at 564.

7    Other California courts have defined "accident" to include an unforeseen

8    consequence of an intended act. For example, in *Hogan v. Midland National*

9    *Insurance Co.*, 3 Cal. 3d 553, 91 Cal. Rptr. 153 (1970), the California Supreme Court

10   defined "accident" to include "an unexpected, unforeseen, or undesigned happening or

11   consequence from either a known or unknown cause." *Id.* at 559; *see Economy*

12   *Lumber Co. of Oakland, Inc. v. Ins. Co. of N. Am.*, 157 Cal. App. 3d 641, 647, 204

13   Cal. Rptr. 135 (1984) ("'accident, as a source and cause of damage to property . . . is

14   an unexpected, unforeseen, or undesigned happening or consequence from either a

15   known or an unknown cause.'") (citation omitted).

16   Thus, an insured will be covered even for intentional acts under a commercial

17   general liability policy as long as it did not intend the harm resulting from those acts.

18   *See Gray*, 65 Cal. 2d at 273 n.12 ("an act which under the traditional terminology of

19   the law of torts is denominated 'intentional' or 'wilful' does not necessarily fall

20   outside insurance coverage"); *Mullen v. Glens Falls Ins. Co.*, 73 Cal. App. 3d 163,

21   171, 140 Cal. Rptr. 605 (1977) (recognizing potential for coverage when "[i]t is

22   possible that an act of the insured may carry out his 'intention' and also cause

23   unintended harm"); *Zurich Ins. Co. v. Killer Music, Inc.*, 998 F.2d 674, 679 (9th Cir.

24   1993) (express allegations of willful copyright infringement triggered duty to defend

25   because plaintiff could still potentially have recovered for non-willful copyright

26   infringement).

27

PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS
OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY

DOCSLA-31990v02

1       The *Wellington* lawsuit did not allege that Legacy intended to damage its

2 property even though it deliberately entered the property and conducted construction

3 and repair work on the retaining wall.  Complaint, ¶¶ 15-18.  To the contrary, while

4 Wellington may have alleged that Legacy intended to go onto its property and perform

5 work, it ***did not allege*** that Legacy intended all of the acts in the causal series of

6 events that lead to Wellington's alleged property damage.  Indeed, Wellington did not

7 allege that Legacy intended the consequences to Wellington, which resulted through

8 an unintended, unexpected and unforeseen happening – the alleged negligence –

9 Legacy's alleged failure to exercise reasonable care and skill in connection with this

10 work.

11       Moreover, similar to *State Farm, Meyer*, and *Geddes*, while Legacy allegedly

12 may have deliberately placed construction equipment, materials and vehicles on the

13 Wellington property, it did not intend or expect that these items would be too heavy or

14 that they might cause damage to the property.  *See Lyons v. Fire Ins. Exch.*, 161 Cal.

15 App. 4th 880, 888, 74 Cal. Rptr. 3d 649 (2008) (conduct was accident when conduct

16 resulting in harm was intended but the ultimate result was not because the actor

17 mistakenly miscalculated the physics involved).  Again, Wellington did not allege that

18 Legacy intended the harm caused by allegedly negligently placing these items on the

19 property.

20       Wellington also alleged that Legacy committed negligent trespass despite

21 having obtained an Encroachment Permit from Caltrans because Caltrans exceeded its

22 authority when issuing the Permit.  However, as recently recognized in *Lyons*, there

23 can be coverage for intentional conduct.

24       In *Lyons*, a sportscaster met a woman at a hotel and followed her in the elevator

25 to the floor or her hotel room, took her by the wrist to a hallway alcove, and asked her

26 to expose her breasts.  The woman subsequently sued the sportscaster, including a

27 claim for false imprisonment.  *Id*. at 883.  The sportscaster sought coverage for the

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS**
**OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02

1    lawsuit from his homeowners insurer.  However, the insurer denied coverage claiming

2    that the false imprisonment was not an "accident" under the policy.  *Id.* at 884.

3         The *Lyons* court noted that there can be negligent false imprisonment when "the

4    conduct resulting in confinement is intended, but the ultimate result is not because the

5    actor is misinformed as to the objective facts."  *Id.* at 888.  Thus, as the *Lyons* court

6    pointed out, even if the insured engaged in certain intentional acts, coverage still could

7    be afforded because the consequences were not intended.

8         However, the court found that those circumstances did not exist on the facts

9    before it in connection with the underlying plaintiff's claims for false imprisonment.

10   Indeed, it was undisputed that the sportscaster grabbed the underlying plaintiff's wrist

11   in the context of his sexual advances, that she did not consent to his actions, and that

12   his conduct restrained her.  *Id.*

13        Here, unlike in *Lyons*, even though Legacy deliberately went onto Wellington's

14   property to conduct the repair work, it did so with the authority of the Encroachment

15   Permit issued to it by Caltrans.  Thus, if Legacy ultimately was misinformed as to the

16   authority this Permit provided, as Wellington alleged, the alleged trespass by Legacy

17   certainly was not intended and, therefore, is covered under Clarendon's policy.

18   **B.     THE TWO CASES RELIED UPON BY CLARENDON ARE**

19           **EASILY DISTINGUISHABLE AND DO NOT SUPPORT**

20           **CLARENDON'S MOTION**

21        In support of its theory, Clarendon relies solely on two cases with fact situations

22   markedly different from the circumstances here – *Quan v. Truck Insurance Exchange*,

23   67 Cal. App. 4th 583, 79 Cal. Rptr. 2d 134 (1998), and *Uhrich v. State Farm Fire &*

24   *Casualty Co.*, 109 Cal. App. 4th 598, 135 Cal. Rptr. 2d 131 (2003).  These cases do

25   not support Clarendon's motion.  In *Quan*, the insured allegedly assaulted and raped a

26   minor.  The minor sued the insured for several intentional torts and included a claim

27   for negligent touching. The *Quan* court held that there was no "accident" because the

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS**
**OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

1   conduct at issue was "necessarily nonaccidental, not because any `harm' was

2   intended, but simply because the conduct could not be engaged in by 'accident.'" 67

3   Cal. App. 4th at 596.  In so holding, the court emphasized that

4         [i]n this case, there is no theory available on the facts

5         expressed in the complaint or made known to the insurer

6         from other sources under which the insured could be liable

7         for physical injuries caused by "accidentally" touching,

8         kissing, embracing or having sex with the claimant, nor is

9         there any additional "happening" to combine with these

10        necessarily deliberate acts so as to produce an "accident"

11        giving rise to bodily injury.

12  *Id.* at 600-01.  In other words, because the insured allegedly engaged in  sexual

13  misconduct against a minor, there was no credible argument that the insured did not

14  expect or intend both the acts and the harm resulting from them.

15       Not surprisingly, in *State Farm*, the court recognized that *Quan* was

16  distinguishable because it involved claims of sexual assault, where no aspect of the

17  causal series of events can be unintended.  *State Farm*, 2008 WL 2524668, at *7.

18  Indeed, citing to *J.C. Penney Casualty Insurance Co. v. M.K.*, 52 Cal. 3d 1009, 278

19  Cal. Rptr. 64 (1991), the *State Farm* court recognized that "'[s]ome acts are so

20  inherently harmful that the intent to commit the act and the intent to harm are one and

21  the same.  The act is the harm.'"  *Id.*  (quoting *J.C. Penney*, 52 Cal. 3d at 1026

22  (emphasis omitted)).  *But see Horace Mann*, 4 Cal. 4th at 1083, 1084-85 (even

23  allegations in sexual molestation case of unwanted touching may not have amounted

24  to inherently harmful sexual abuse and therefore duty to defend existed); *David Kleis,*

25  *Inc. v. Superior Court*, 37 Cal. App. 4th 1035, 1050-51, 44 Cal. Rptr. 2d 181 (1995)

26  (assuming duty to defend allegations of sexual harassment).

27

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS**
**OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02

1    *Uhrich*, the other case on which Clarendon relies, is factually distinguishable

2    from this action.  In *Uhrich,* the insured was seeking coverage for various claims,

3    including assault and battery, defamation and wrongful detention.  109 Cal. App. 4th

4    at 608, 611.  While the *Uhrich* court held that the insurer had no duty to defend, it did

5    so because the evidence unequivocally demonstrated that the insured not only

6    intended the conduct, but also intended to inflict harm.  *Id.* at 611.  Clarendon cannot

7    demonstrate that intent here, as even Wellington's complaint characterizes Legacy's

8    conduct as negligent, not intentional.  Indeed, the *Uhrich* court acknowledged that

9    torts, such as "assault," "wrongful detention," and "defamation," (all of which require

10   intentional acts), "can be committed via negligent conduct."  *Id.* at 610.

11   **C.      EVEN IF THE ALLEGED CONDUCT WAS INTENTIONAL,**

12   **CLARENDON HAS NOT DEMONSTRATED THAT LEGACY**

13   **ACTED INTENTIONALLY**

14   Even if the acts of some Legacy employees could be construed to be acts where

15   harm was intended (which Legacy disputes), this still does not mean that there is no

16   "occurrence."  In fact, because Legacy's liability is vicarious (that is, based upon the

17   acts of its employees), Legacy is covered under the Policy.  In the case of a corporate

18   insured, the question of whether conduct is excluded as "intentional" conduct is not

19   answered simply by an insurer proving that someone in the corporation intended the

20   wrongful consequences of an act.  Coverage for a corporate insured is barred only if

21   the policy-making level of management acted with the requisite malevolent intent.

22   In *Dart Industries Inc. v. Liberty Mutual Insurance Co.*, 484 F.2d 1295 (1973),

23   the Ninth Circuit Court of Appeals held that coverage for damages in a libel action

24   was not barred by Insurance Code section 533 (which bars coverage for certain willful

25   acts), even though the libel was the result of the willful act of the corporate president,

26   acting within the course and scope of his responsibilities.  It upheld the trial court's

27   ruling that section 533 would not apply without a showing that the board of directors

1  or other senior management either authorized or ratified the libelous acts. *Id.*

2      In *Downey Venture v. LMI Insurance Co.*, 66 Cal. App. 4th 478, 78 Cal. Rptr.

3  2d 142 (1998), the Court of Appeal addressed insurance coverage for a claim of

4  malicious prosecution, also in the context of section 533.  The Court held:

5          Although [s]ection 533 bars indemnity of an insured who

6          *personally* commits an act of malicious prosecution, the

7          statute does not bar indemnity of an insured who does not

8          personally commit the act but who is vicariously liable for

9          another person's act of malicious prosecution.

10  *Id.* at 512; *see also Fireman's Fund Ins. Co. v. City of Turlock*, 170 Cal. App. 3d 988,

11  1001, 216 Cal. Rptr. 796 (1985), *disapproved on other grounds*, *Vandenberg v.*

12  *Superior Court*, 21 Cal. 4th 815, 88 Cal. Rptr. 2d 366 (1999) (Section 533 does not

13  bar indemnity for vicarious liability based upon the willful fraud of an employee not

14  acting in a "managerial capacity").

15      Because Clarendon has failed to demonstrate that Legacy has been held

16  vicariously liable for the acts of any of its employees that may have intentionally

17  conducted the activities alleged in Wellington's complaint, Clarendon cannot

18  demonstrate that there is no potential for coverage under the Policy.  Thus, its motion

19  to dismiss should be denied.

20  **V.    CLARENDON FAILS TO EVEN ADDRESS THAT THE *WELLINGTON***

21  **LAWSUIT ALLEGES AN "OCCURRENCE" UNDER THE PERSONAL**

22  **INJURY COVERAGE.**

23  Even if the policy could be enforced as Clarendon contends, that still would not

24  excuse Clarendon from its breach of its duty to pay defense costs.  Clarendon has a

25  separate duty under the personal injury coverage, which specifically provides

26  coverage for injury, arising out of offenses, including "[w]rongful entry into, or

27  eviction of a person from, or invasion of the right of private occupancy of a room,

DOCSLA-31990v02

1  dwelling or premises that the person occupies with the permission of or on behalf of

2  its owner, landlord or lessor.  Complaint, Ex. B, § V., ¶ O.  Moreover, an

3  "occurrence" for the personal injury coverage is defined as "an act or offense."  *Id.*,

4  Ex. B, § V, ¶ N.  An "accident" is not required.  An "offense" includes intentional

5  conduct and is not limited to simply an "accident," no mater how "accident" is

6  defined.  *See, e.g., Zurich Ins. Co. v. Peterson*, 188 Cal. App. 3d 438, 232 Cal. Rptr.

7  807 (1986) (coverage for malicious prosecution); *Vargas v. Hudson County Bd.*, 949

8  F.2d 665, 672 (3d Cir. 1991) (personal injury coverage is "not confined to negligent or

9  inadvertent actions").

10      The *Wellington* lawsuit contains allegations that potentially invoke coverage

11  under the Policy's personal injury provisions.  Indeed, Wellington sought damages

12  against Legacy for negligent trespass and nuisance, for the alleged wrongful entry

13  onto its premises.

14      However, in its motion, Clarendon does not raise Legacy's claims for coverage

15  under the personal injury coverage of the Policy.  Indeed, it claims that Legacy fails to

16  state a claim because it did not allege an "accident."  As discussed above, however, an

17  "accident is not required for personal injury coverage.  An "occurrence" is defined for

18  the personal injury coverage as an "act or offense."  *Id.*, Ex. B, § V, ¶ N.  Thus,

19  because Clarendon has failed to address in its motion claims for coverage under the

20  personal injury provisions of the Policy, it is improper to dismiss Legacy's complaint.

21  **VI.  CLARENDON HAS WAIVED, OR IS ESTOPPED FROM ASSERTING,**

22      **THAT IT HAS NO DUTY TO PAY DEFENSE COSTS LEGACY FOR**

23      **THE *WELLINGTON* LAWSUIT.**

24      Even if Clarendon had a reasonable basis to deny coverage to Legacy, which, as

25  demonstrated above, it does not, Clarendon has waived any right to argue that no

26  "accident" has been alleged in the *Wellington* lawsuit.  An insurer's failure to timely

27  specify its reasons for not providing coverage for an insured's claim waives all

DOCSLA-31990v02

1  defenses that a reasonable investigation would have revealed.  *See Miller v. Elite Ins.*

2  *Co.*, 100 Cal. App. 3d 739, 754, 161 Cal. Rptr. 322 (1980).  Waiver of a right occurs

3  when a "party's acts are so inconsistent with an intent to enforce the right as to induce

4  a reasonable belief that such right has been relinquished."  *Waller*, 11 Cal. 4th at 33-

5  34.  When Legacy gave Clarendon notice of *Wellington*, Clarendon failed to argue

6  that no "accident" is alleged in the *Wellington* lawsuit.  To the contrary, Clarendon

7  advised that it would be providing a defense to Legacy.  Complaint, ¶¶ 20-21.

8  Therefore, in reliance, Legacy sent letters to Clarendon confirming (a) Clarendon's

9  agreement to defend; and (b) Clarendon's consent to the use of Legacy's defense

10  counsel.  Moreover, Legacy sent attorney-client privileged invoices for its defense

11  counsel's services to Clarendon pursuant to this prior representation of coverage.  *Id.*

12       California law requires that Clarendon raise any defenses to coverage within 40

13  days upon receiving notice of a claim.  *See* Cal. Code Regs. tit. 10, § 2695.7(b)

14  ("Upon receiving proof of claim, every insurer . . . shall immediately, but in no event

15  more than forty (40) calendar days later, accept or deny the claim, in whole or in

16  part.").  Clarendon did not do so.  Clarendon was obligated to tell Legacy in July

17  2005, not October 2005, of "all bases for such . . . denial," "the factual and legal bases

18  for each reason given," and reference to the specific policy provisions relied upon,

19  with "an explanation of the application of the statute, applicable law, or provision."

20  *Id.*, § 2695.7(b)(1).  Clarendon's failure to comply with these clear rules precludes its

21  right to raise its untimely ground for denial.  Complaint, ¶¶ 22-23.

22       In addition, Clarendon is equitably estopped from belatedly identifying reasons

23  to deny coverage to Legacy.  Equitable estoppel serves to "prevent a person from

24  asserting a right which has come into existence by contract, statute or other rule of law

25  where, because of his conduct, silence or omission, it would be unconscionable to

26  allow him to do so."  *Brown v. Brown*, 274 Cal. App. 2d 178, 188, 82 Cal. Rptr. 238

27  (1969); *see also Waller*, 11 Cal. 4th at 34 (even in the absence of evidence that the

1    insurer waived defenses, it still may be estopped from denying coverage if the insured

2    detrimentally relied). Here, Clarendon did not claim that no "accidental conduct" had

3    been alleged against Legacy for two months after Clarendon's acknowledgement of its

4    defense obligations. Complaint, ¶¶ 21-22. And, as discussed above, Legacy fully

5    relied on Clarendon's acknowledgement of coverage. *Id.*, ¶¶ 20-21. Thus, any

6    attempts to deny coverage to Legacy now are not permissible.

7    **VII.    LEGACY'S BAD FAITH CLAIM IS SUFFICIENTLY PLED**

8              An implied covenant of good faith and fair dealing exists in every insurance

9    contract that neither party will do anything to injure the right of the other to receive

10   benefits under the agreement. *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654,

11   658, 328 P.2d 198 (1958). This implied covenant mandates that the insurer refrain

12   from doing "anything which injures the right of the [insured] to receive the benefits of

13   the agreement." *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 940, 132 Cal. Rptr. 424

14   (1976). To fulfill its obligation not to impair an insured's right to receive the benefits

15   of the agreement, an insurer "must give at least as much consideration to the

16   [insured's] interests as it does to its own." *Egan*, 24 Cal. 3d at 818-19.

17             "Bad faith" exists if an insurer unreasonably withholds benefits due under a

18   policy without proper cause. *See Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 920-21,

19   148 Cal. Rptr. 389 (1978). Bad faith does not require malicious or intentional

20   misconduct, but only conduct that "violate[s] community standards of decency,

21   fairness, or reasonableness." *Id.* at 922 n.5. Through Clarendon's belated and

22   unreasonable refusal to pay Legacy's defense fees and costs, despite the fact that it (a)

23   previously agreed to do so; and (b) has no reasonable basis to deny coverage to

24   Legacy, Clarendon is undermining a major purpose of insurance—peace of mind that

25   a defense will be provided and claims will be paid. *Egan,* 24 Cal. 3d at 819. This has

26   resulted in Clarendon's breach of the implied covenant of good faith and fair dealing.

27

1  *See Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 31, 148 Cal. Rptr. 653 (1978),

2  *disapproved on other grounds*, *Egan*, 24 Cal. 3d at 824.

3      Clarendon argues that the bad faith claim by Legacy should be dismissed

4  because there is no coverage under its Policy, and even if there was, its decision to

5  deny coverage was reasonable. This is not enough. First, as demonstrated above,

6  there is, in fact, coverage for Legacy.

7      Second, as the above indicates, Clarendon's denial of coverage is both wrong

8  and unreasonable. Indeed, Legacy's Complaint sets forth numerous allegations of

9  why Clarendon's denial was unreasonable. Complaint, ¶¶ 38-42. Thus, a claim is

10  adequately stated.

11      Third, even if Clarendon was correct, and its Policy does not provide coverage,

12  it still can be liable for bad faith. The implied covenant mandates that the insurer

13  refrain from doing "anything which injures the right of [the insured] to receive the

14  benefits of the agreement." *Murphy*, 17 Cal. 3d at 940. If an insurer fails to deal in

15  good faith and refuses, without proper cause, to compensate its insured for a covered

16  loss, it is liable in tort for breach of the implied covenant of good faith and fair

17  dealing. *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 574, 108 Cal. Rptr. 480 (1973).

18  This can be true even if the policy ultimately does not provide coverage for the claim.

19  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 996 (9th Cir. 2001) (court specifically

20  noted that there are many situations where a bad faith claim can exist without

21  coverage); *see also Adams v. Allstate Ins. Co.*, 187 F. Supp. 2d 1207, 1214 (C.D. Cal.

22  2002) (while the "genuine dispute" doctrine is well settled, the California Supreme

23  Court has "yet to define the limits of this doctrine"); *Adams v. Allstate Ins. Co.*, 187 F.

24  Supp. 2d 1219, 1226 (C.D. Cal. 2002) (same). Additionally, an insurer may be liable

25  to its insured for tortious bad faith regardless of whether there is coverage, "if it

26  unreasonably delayed in performing an investigation of the claim before concluding

27  there was no coverage and the insured suffered consequential loss as a result of the

1  delay." *Murray v. State Farm Fire & Cas. Co.,* 219 Cal. App. 3d 58, 65-66 n.5, 268

2  Cal. Rptr. 33 (1990).

3        Fourth, and finally, Legacy allege that Clarendon has engaged in many acts of

4  bad faith conduct unrelated to its coverage denial. *See, e.g.,* Complaint, ¶¶ 20-22, 24-

5  25, 28.  These allegations must be accepted as true. *Zinermon*, 494 U.S. at 118.

6  **VIII.  CONCLUSION**

7        Clarendon began by withdrawing coverage that it had previously promised, and

8  now is continuing its bad behavior by bringing this motion claiming that no

9  "occurrence" is alleged against the overwhelming weight of authority.  For all of the

10 reasons stated above, this motion should be denied in its entirety.

11

12 Dated:  July 3, 2008                    DICKSTEIN SHAPIRO LLP

13

14

15                                        BY:   s/Susan Page White
                                                Attorneys for Plaintiff
16                                              e-mail: whites@dicksteinshapiro.com

17

18

19

20

21

22

23

24

25

26

27

**PLAINTIFF'S OPPOSITION TO 12(b)(6) MOTION TO DISMISS**
**OF DEFENDANT CLARENDON AMERICA INSURANCE COMPANY**

DOCSLA-31990v02