# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGACY PARTNERS, INC., <br><br> Plaintiff, <br> v. <br> CLARENDON AMERICAN INSURANCE COMPANY, <br><br> Defendant. | Case No. 08cv920 BTM (CAB) <br><br> **ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff Legacy Partners, Inc. ("Contractor" or "Plaintiff") has filed a Motion for Partial Summary Judgment [Doc. 30]. Defendant Clarendon American Insurance Company ("Insurer" or "Defendant") has also filed a Motion for Summary Judgment or Alternatively Partial Summary Judgment [Doc. 29]. For the following reasons, the Court **DENIES** Plaintiff's Motion in its entirety and **GRANTS** Defendant's Motion in its entirety.

## I. BACKGROUND

Virtually all of the facts of this case are undisputed. Plaintiff entered into an insurance policy with Defendant (the "Policy"). Subject to certain exclusions, the Policy insured Plaintiff against losses arising out of accidental property damage to real property.

After obtaining the Policy, Plaintiff did construction work on property owned by Wellington Group, LLC (not a party to this action). Wellington sued Plaintiff for alleged

property damage arising out of Plaintiff's construction work. When Plaintiff requested from Defendant attorneys fees and coverage for the losses it incurred in defending Wellington's suit, Defendant refused coverage.

**A. The Wellington Suit**[1]

In 2004, Wellington sued Plaintiff, alleging several causes of action including breach of contract, trespass, negligent and intentional interference with prospective economic advantage, inverse condemnation, nuisance and negligence (the "Wellington Suit").

Wellington owns undeveloped real property near the I-15 freeway in San Diego County, California. Plaintiff owns developed real property next to Wellington's property.

Caltrans contacted Wellington and notified Wellington of its intention to widen I-15. In order to do so, Caltrans had to access Wellington's property, which Caltrans had a right to do under a previously granted highway easement deed. As part of the widening project, Caltrans needed to have a keystone retaining wall repaired on Plaintiff's property. Although the retaining wall was on Plaintiff's property, it was directly adjacent to Wellington's property. Since Plaintiff's property was already developed, and because repairing the retaining wall would require heavy machinery and excavation, Plaintiff sought to access the retaining wall from Wellington's property.

Plaintiff asked Wellington for an easement for three purposes: (1) for ingress, egress and construction staging of the site in order to allow Legacy to avoid using its own, already developed property, (2) for easier access to repair the keystone wall, (3) to place soil anchors under the Wellington property to stabilize the soil due to the alleged existence of an ancient landslide. Wellington refused Plaintiff's request for an easement, but Caltrans granted Plaintiff an encroachment permit that would allow Plaintiff to conduct the repairs without Wellington's consent.

---

[1] The Court takes judicial notice of the allegations in the Wellington Suit. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (Court may take judicial notice of matters of public record that are not subject to reasonable dispute.). The facts recited here are merely allegations in that suit and not the Court's factual findings.

Wellington alleged that repairing the retaining wall was unnecessary and that its expert found that there had been no ancient landslide. Wellington believed that any repairs should have been performed solely on Plaintiff's property. Furthermore, Wellington asserted that the scope of Caltrans' easement did not encompass Plaintiff intended repairs.

Plaintiff went ahead with the repairs on the retaining wall and used Wellington's property. As a result of Plaintiff's work, Wellington alleged that Plaintiff (1) trespassed upon Wellington's property, (2) constructed subterranean tiebacks without permission, thereby preventing Wellington from making certain improvements to the land, (3) failed to exercise reasonable care in performing construction work, (4) caused damage by placing heavy equipment and materials on the Wellington property, and (5) negligently removed storm and pollution work causing erosion and other damage.

Plaintiff defended the suit, incurring about $500,000 in defense costs, and ultimately settled the Wellington Suit for $350,000. Plaintiff sought coverage for its defense costs from Defendant, but Defendant refused and claimed that the Wellington Suit was not covered under the Policy.

**B. The Insurance Policy**

The Policy gives Contractor $1,000,000 in coverage per occurrence, with a retained limit of $100,000 per occurrence. Under the Policy, the Insurer agreed to "pay on behalf of the Insured that portion of the **Ultimate Net Loss**, in excess of the Retained Amount, which the **Insured** has become legally obligated to pay as damages and related **Claims Expense** because of . . . **Property Damage** . . . to which this insurance applies. (White Decl., Ex. 2 (hereinafter "Policy") § I(A)(1).)[2] The bolded words are all defined terms, and the definitions are set forth below.

The Court first addresses the defined terms related to litigation expenses. "The defense of claims or **Suits** to which this policy applies is the obligation of the Insured." (*Id.*

---

[2] The Policy uses bolded terms to identify defined terms. The Court reproduces the bolded terms here in their original form for the sake of clarity. Unless otherwise specified, terms bolded here were also bolded in the Policy.

at § I(B)(1).) Nevertheless, the Insurer is still responsible for some defense costs. The Insurer must pay for the Ultimate Net Loss in excess of the Retained Amount. Ultimate Net Loss is "all sums actually paid, or which the **Insured** is legally obligated to pay, as damages and **Claims Expense** in satisfaction of claims or **Suits** for which insurance is afforded under this policy." (*Id.* at § V(U).) Claims Expense means the cost of claims investigation, cost of litigation, interest on awards or judgments, or legal expenses which can be directly allocated to a specific claim. (*Id.* at § V(E).) And Suits are "civil proceeding[s] in which damages because of . . . **Property Damage** . . . to which this insurance applies are alleged." (*Id.* at § V(T).)

The Policy defines Property Damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property, or . . . loss of use of tangible property that is not physically impaired." (*Id.* at § V(R).) But Insurer is not obligated to pay for any and all Property Damage. Insurer must only pay for Property Damage "caused by an **Occurrence**." (*Id.* at § I(A)(3).) And the Policy defines Occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at § V(N).)

Taken together, these provisions require Insurer to pay for litigation expenses arising out of Suits alleging Property Damage, if the damage was allegedly caused by an accident.

The Policy also has certain exclusions. There are four that are potentially applicable here. The Policy does not apply to "(d) [p]roperty in the care, custody or control of the **Named Insured** or over which the **Named Insured** is for any purpose exercising physical control; (e) [t]hat particular part of real property on which the **Named Insured** or any contractors or subcontractors . . . are performing operations, if the **Property Damage** arises out of those operations; or (f) [t]hat particular part of any property that must be restored, repaired or replaced because the **Named Insured's Work** was incorrectly performed on it." (Policy, Alienated Premises Endorsement ("APE") at § I(C)(9)(e)–(f).) The fourth exclusion exempts "**Property Damage** expected or intended from the standpoint of the **Insured**." (Policy § I(C)(13).)

## II.  LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.  When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

//
//
//

## III.  DISCUSSION

**A.  Defendant's Duty to Pay Defense Costs**

Plaintiff and Defendant move for partial summary judgment "regarding [Defendant's] duty to pay defense costs."  In order to succeed on their motions, they must establish that there is no genuine issue of material fact on Plaintiff's claim that Defendant breached the Policy when Defendant refused to pay for Plaintiff's litigation expenses.  The elements of a breach of contract claim are (1) a valid contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff.  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006).  The parties do not dispute that there was a valid contract, that plaintiff performed, and that plaintiff suffered damages by paying the litigation expenses.  But they do dispute whether Defendant breached the Policy.

As discussed above, the Policy requires Insurer to pay for litigation expenses arising out of Suits alleging Property Damage, if the damage was allegedly caused by an accident. The parties disagree primarily about three things.  First, they disagree about whether Defendant must pay litigation expenses if the damages alleged in the Wellington Suit are *potentially* covered by the Policy, or only if the damages are *actually* covered by the Policy. Second, they disagree about whether the damages claimed in the Wellington Suit were intentional or accidental.  In order for the Policy to apply, the alleged damages must have been accidental.  And third, they disagree about whether any Policy exclusions apply.  The Court resolves these disagreements below.

1. <u>Defendant Is Liable for Alleged Damages That Are Potentially Covered</u>

Some insurance policies impose a duty to defend on the insurer.  When an insurer has a duty to defend, the "insurer must defend its insured against claims that create a *potential* for indemnity under the policy." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005).  The parties do not dispute that courts analyze duty-to-defend policies under the potentiality standard.

The Policy at issue here, however, is different. Instead of imposing a duty to defend, the Policy requires Plaintiff to defend itself. But Defendant must reimburse Plaintiff for certain defense costs. The Policy only requires Defendant to pay for defense costs arising out of "civil proceeding[s] in which damages because of . . . **Property Damage** . . . to which this insurance applies are *alleged*." (Policy at § V(T) (emphasis added).) The Policy's use of the word "alleged" is critical to the Court's analysis.

The Policy does not refer to proven damages or actual damages. It refers to alleged damages. Allegations, by their nature, are not facts; they are assertions that may, if proven, eventually become facts. In other words, allegations have the *potential* to become facts. Thus, if the damages alleged in the Wellington Suit are *potentially* covered by the Policy, then Defendant must pay for the litigations costs in defense of that suit. This interpretation of the Policy adheres to California law's requirement that the court interpret a policy's coverage broadly in order to provide the greatest possible protections to the insured. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003).

The Ninth Circuit has applied the potentiality standard to a similar policy that imposed a duty to reimburse defense costs. In *Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497 (9th Cir. 1993), the Ninth Circuit held that policies imposing a duty to pay defense costs are triggered when a suit "'*potentially* seeks damages within the coverage of the policy.'" 991 F.2d at 503 (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966)). The insured bears the burden of proving potential coverage. *Id.* This holding squarely addresses the issue before the Court.

Nevertheless, Defendant attempts to distinguish *Olympic Club* on two grounds. First, Defendant claims that the Policy at issue here is distinguishable. Although the policy in *Olympic Club* was a director and officer policy, it contained a provision requiring the insurer to pay defense costs that is in all material respects the same as the one here. The provision in *Olympic Club* required the insurer to pay for losses, including defense costs, arising out of "wrongful act[s] done or allegedly done" by the directors and officers. 991 F.2d at 499. Here, the Policy requires Defendant to pay for defense costs arising out of "civil

proceeding[s] in which damages because of . . . **Property Damage** . . . to which this insurance applies are *alleged*." (Policy at § V(T) (emphasis added).)  Both provisions cover lawsuits in which certain wrongs or damages are alleged, and Defendant's argument to the contrary is unconvincing.

Defendant also claims that the Ninth Circuit's application of the potentiality standard in *Olympic Club* was dicta.  But the Ninth Circuit necessarily decided whether the insurer had a duty to pay defense costs under a director and officer insurance policy.  In analyzing whether the insurer had to pay, the Ninth Circuit held that the insured had the burden "to show that the [underlying] complaint '*potentially* seeks damages within the coverage of the policy.'" 991 F.2d at 503.  Deciding the burden of proof and applying the potentiality analysis were necessary to the Ninth Circuit's holding that the damages alleged in that case were not covered by the policy because the insured had not proven that the allegations were potentially covered.  *Id.*

Instead of following *Olympic Club*, Defendant suggests the Court should follow the holding of *Jeff Tracy, Inc. v. United States Specialty Ins. Co.*, 636 F. Supp. 2d 995 (C.D. Cal. 2009).  *Jeff Tracy* involved a dispute regarding coverage under a directors' and officers' (D&O) policy for a putative class action brought against the insured by its employees.  *Id.* at 998.  The insured argued that the court should apply the duty to defend doctrine to the D&O policy and require the insurer to pay for all the defense costs.  But the court analyzed the policy and held that it did not impose a duty to defend.  *Id.* at 1003.  Instead, the policy expressly disclaimed the duty to defend and only required the insurer to pay for those defense costs that it consented to pay and that arose from covered claims.  *Id.*  The court placed a burden on the insured to "establish that the underlying claims are within the basic scope of coverage." *Id.* at 1004.

Defendant uses the holding in *Jeff Tracy* to argue against the potentiality standard. But *Jeff Tracy* does not support Defendant's position for three reasons.  First, the court in *Jeff Tracy* merely placed the burden on the insured to "establish that the underlying claims are within the basic scope of coverage," *id.*, and then analyzed the allegations in the underlying

complaint to determine whether they alleged covered losses, *id.* at 1004–05. The Court here has similarly placed the burden on Plaintiff to show that the damage allegations in the Wellington Suit are potentially covered by the Policy. So, the holding in *Jeff Tracy* is not materially different from the holding here.

Second, the policy in *Jeff Tracy* is not like the one here. That policy required the insurer to consent to any defense costs as a condition for reimbursement. It also allocated defense costs between covered and uncovered claims. And the insurer in that case did not have the right to participate in the defense of a case. The Policy here is different on all of these counts. Thus, the holding regarding the D&O policy in *Jeff Tracy* in inapplicable to the Policy here.

And third, the court in *Jeff Tracy* did not actually address the issue before the Court. It only addressed whether the duty-to-defend standard applied to the D&O policy. *Id.* at 1003–04. Here, the parties do not dispute that the duty-to-defend standard does not apply. Instead, they dispute whether the potentiality standard applies to a policy imposing a duty to pay defense costs. And under the language of the contract and Ninth Circuit precedent, it does.

2.      <u>The Court Has Already Ruled That the Wellington Suit Alleges an Accident</u>

The Court next examines whether Plaintiff has met its burden of proving that the allegations in the Wellington Suit are potentially covered by the Policy. Plaintiff and Defendant appear to agree that Defendant must only pay defense costs if the Wellington Suit alleges Property Damage resulting from an accident. But they disagree about the definition of accident and whether the Wellington Suit actually alleges one.

Although the Policy does not define an accident, several California cases do. Under California law, in the context of liability insurance, an accident is "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Hogan v. Midland Nat'l Ins. Co.,* 3 Cal. 3d 553, 559 (1970). "[A]n injury-producing event is

not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor." *Delgado v. Interinsurance Exchange of the Automobile Club of Southern California*, 47 Cal. 4th 302, 312 (2009).

When all of the acts, the manner in which the acts were done, and the objective accomplished occurred as intended by the actor, the actor cannot rely on a mistake of fact or law to transform the knowingly and purposefully inflicted harm into an accidental injury. *Delgado*, 47 Cal. 4th at 1089. Thus, in *Delgado*, the insured's unreasonable belief in the need for self-defense did not change the fact that the insured intended to strike and kick and cause injury to Delgado and indeed did so. Similarly, in *Swain v. California Casualty Ins. Co.*, 99 Cal. App. 4th 1 (2002), the deliberate eviction of a tenant was not rendered an accident by the mistaken belief that the acts were lawful. *See also Merced Mutual Ins. Co. v. Mendez*, 213 Cal. App. 3d 41 (1989) (insured's mistaken belief that victim consented did not render oral copulation and attempted oral copulation an accident); *Modern Development Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 942 (2003) ("A mistake of fact in an employment termination does not transform the intentional act of terminating an employee into an accident.").

In contrast, when an insured's deliberate acts are not inherently harmful and have unintended and unexpected consequences, the resulting damage is accidental. For example, in *State Farm Fire and Cas. Co. v. Superior Court*, 164 Cal. App. 4th 317 (2008), the court held that if an insured throws someone into a swimming pool, intending to get the other person wet, but unintentionally fails to use enough force, resulting in the person landing on the pool's cement step and suffering injuries, the incident constitutes an "accident." The court explained that the act directly responsible for the victim's injury (throwing too softly) would be an undesigned happening, and the consequence (the victim hitting concrete and becoming injured) would not be intended or anticipated. Id. at 834-37.

Here, the Court has already ruled that although some of the allegations in the Wellington Suit were not accidents, some were.

> The Court agrees that many of Plaintiff's alleged actions, such as the trespass upon Wellington property or the placement of subterranean tie-backs, appear to be intentional actions with intended consequences, rather than accidents. However, other allegations such as the damage caused by placement of heavy construction equipment and materials on the Wellington property and the negligent removal of Wellington's storm and pollution work could have an accidental component depending on the facts of the case. For example, Plaintiff's intentional act of placing equipment on Wellington's property could have resulted in unintended consequences if Plaintiff accidentally deployed the wrong or too heavy equipment. Plaintiff's intentional act of performing repair work on the retaining wall could have involved unintended consequences if Plaintiff's employees accidentally caused damage while in the course of performing the intended repair. Also, the Court cannot tell from the pleadings whether the removal of Wellington's storm and pollution work was an intended consequence or the accidental byproduct of Plaintiff's repairs to the retaining wall. . . Because the Court cannot conclude at this juncture that Plaintiff's actions could not constitute "occurrences" under any set of facts consistent with the allegations as pled, the Court denies Defendant's motion to dismiss Plaintiff's first and second claims for breach of insurance contract.

October 2, 2008 Order at 3–4.

Furthermore, although Plaintiff intended to install the subterranean tiebacks, it may not have intended the resulting damage: Wellington's inability to construct two office towers on its property. The Court's previous ruling on this issue is the law of the case. *See One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1159 (9th Cir. 2009) (Under the law of the case doctrine, "a court should not reopen issues decided in earlier stages of the same litigation.") (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997)). The Court will not depart from its earlier conclusion that the allegations in the Wellington Suit are potentially covered under the *primary* provisions of the Policy. But Defendant now uses the *exclusionary* provisions of the Policy to argue that the allegations in the Wellington Suit are not covered. Defendant did not make this argument in support of its Motion to Dismiss and the Court has yet to consider them. The Court, therefore, now considers whether any of the exclusions apply.

3. <u>Exclusions Apply to Limit Defendant's Liability</u>

Exclusionary clauses in an insurance contract are interpreted narrowly against the insurer. *MacKinnon*, 31 Cal. 4th at 648. "[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. Any exception to the performance of the

basic underlying obligation must be so stated as clearly to apprise the insured of its clear and unmistakable language." *Id.* (quoting *State Farm Mut. Auto. Ins. co. v. Jacober*, 10 Cal. 3d 193, 201–02 (1973). Courts must uphold coverage if any reasonable interpretation of an exclusionary clause would permit recovery. *MacKinnon*, 31 Cal. 4th at 655. In other words, the insurer must establish that "its interpretation is the *only* reasonable one." *Id.* The burden is on the insurer to prove that a claim is excluded under a policy. *Id.* at 648.

On cross-motions for summary judgment, the "insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" *Amer. States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18, 27 (2009) (quoting *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993)). In establishing lack of coverage, the insurer must consider the underlying complaint and any other sources of information available to it. *Id.* at 26. But the insurer need not look beyond the complaint; it satisfies its obligation to investigate by merely examining the complaint and comparing it to the insurance policy. *American Int'l Bank v. Fidelity & Deposit Co.*, 49 Cal. App. 4th 1558, 1571. Thus, if the complaint is not potentially covered by the policy, and no other information available to the insurer shows potential coverage, then the insurer may rightly deny a claim. *See id.*

Here, although both parties have had ample opportunity to do so, they have not submitted to the Court or to each other any facts outside the underlying complaint related to coverage potential. Therefore, the Court compares only the allegations in the Wellington Suit to the Policy to determine if those allegations are excluded.

a. <u>The Exclusive Control Exclusion</u>

The Policy has three potentially applicable exclusions to support a denial of coverage. The first exclusion applies to damage to "[p]roperty in the care, custody or control of the **Named Insured** or over which the **Named Insured** is for any purpose exercising physical control." (Policy, APE § I(C)(9)(d).) But where the "care, custody or control" is not exclusive,

//

this exclusion does not apply. *See Home Indemn. Co. v. Leo L. Davis, Inc.*, 79 Cal. App. 3d 863, 871 (1978) (exclusion applied because insured was "mere instrumentalit[y]" of another).

Based on the allegations in the Wellington Suit, it appears that the Wellington Property was in Plaintiff's exclusive control while it performed its work. Although there are no allegations that Plaintiff was in exclusive control of the Wellington Property, there is nothing that would support a reasonable inference that anyone else directed Plaintiff or that Plaintiff was merely an instrumentality of some other actor, like in *Leo L. Davis, Inc.*, 79 Cal. App. 3d at 871. The burden is on the insurer to prove an exclusion applies, *MacKinnon*, 31 Cal. 4th at 648, and the Court finds that Defendant has met this burden based on the allegations in the Wellington Suit. Moreover, Plaintiff has not put forth evidence showing a triable issue regarding its exclusive control over the Wellington Property.

Instead of producing evidence establishing a triable issue, Plaintiff argues that the exclusion does not apply where the insured is merely given temporary access to the property. In support, Plaintiff cites *Leo L. Davis, Inc.* But that case merely reviews conflicting case law regarding this type of exclusion. *Id.* at 871–72. For example, the court states that "[a]lmost invariably where coverage is denied, physical control by the insured has been exclusive, even if such exclusivity was only *momentary*, so long as the damage occurred in that moment." *Id.* at 871. But in the next paragraph, it states that the exclusion has been held inapplicable when the insured has "been given merely temporary access to the damaged property." *Id.* (citing Illinois state court case). Thus, the court concluded that the "only consistency in the cases is the need for painstaking evaluation of the specific facts of each case, especially those that bear on the nature and extent of the insured's control." *Id.* at 871–72.

Here, the allegations in the Wellington Suit show that Plaintiff exercised exclusive control over the Wellington Property during its extensive operation, and that the damages arose during its control. There are no allegations that Plaintiff shared control with another, or that Plaintiff acted at the direction of some other party. Moreover, Plaintiff has not established facts contradicting the allegations in the Wellington Suit. Accordingly, the Court

enters summary judgment in favor of Defendant on Plaintiff's first cause of action.[3]

### b. The Operations Exclusion

The operations exclusion is an additional basis to exclude coverage. This exclusion excludes damage to "[t]hat particular part of real property" on which Plaintiff performed operations, if the damage arises out of those operations. (Policy § I(C)(9)(e).) For this exclusion to apply, Defendant must prove that all of the damage was to the particular part of real property on which Plaintiff performed work. *See Roger H. Proulx & Co. v. Crest-Liners, Inc.*, 98 Cal. App. 4th 182, 202–03 (2002).

This exclusion's applicability depends on the definition of operations, and whether all of the damages arose from Plaintiff's operations. Although Plaintiff defines operations broadly as including all of its business operations and not its isolated operations on the Wellington Property, the Court finds this interpretation unreasonable. By its terms, the exclusion applies to "[t]hat particular part of real property" on which Plaintiff performed operations, not to all of Plaintiff's business operations. *See id.* at 189 (in case where faulty liner in water tank caused extensive water damage throughout building, similar exclusion did not apply because damage occurred to property beyond where insured performed operations). Thus, the Court applies this definition of operations to the Wellington Suit.

The Wellington Suit alleges that Plaintiff performed work on the retaining wall, installed subterranean tiebacks, and removed storm and pollution work. The Suit also alleges that Plaintiff damaged Wellington's property by placing heavy equipment and materials on it. Placing materials are an integral part of Plaintiff's operations, which allegedly involved the installation and removal of subterranean fixtures and the use of heavy machinery. Thus, all

---

[3] Plaintiff also argues that this type of exclusion does not apply where the property damage is to property affixed to realty, citing to *Leo L. Davis* for support. 79 Cal. App. 3d at 871. But that case merely states that cases involving realty usually hold that when access to the property was temporary, the exclusion does not apply. *Id.* It does adopt that proposition as its holding, nor is the statement as broad as Plaintiff represents it to be.

the damages alleged in the Wellington Suit arose out of Plaintiff's operations on the Wellington Property and those damages are therefore excluded under the operations exclusion. The Court holds that there is not a triable issue of fact on the applicability of this exclusion, especially given that Plaintiff has presented no relevant facts outside of the allegations in the Wellington Suit. Thus, the Court enters summary judgment in favor of Defendant on the issue of defense costs, and denies Plaintiff's Motion in its entirety.

   c. <u>Defendant's Remaining Exclusion Arguments</u>

Given the Court's entry of summary judgment in favor of Defendant, the Court need not examine Defendant's other exclusion arguments. Nevertheless, the Court addresses them for the sake of completeness.

The repair exclusion would also be partially applicable. It excludes from coverage "[t]hat particular part of any property that must be" repaired because Plaintiff performed its work incorrectly. (Policy § I(C)(9)(f).) The Wellington Suit sought damages for removing the storm and pollution work. Thus, the portion of the Suit seeking replacement costs for this removal would fall under this exclusion.

Defendant also invokes Exclusion No. 13, which excludes "**Property Damage** expected or intended from the standpoint of the **Insured**." (Policy § I(C)(13).) This exclusion applies when the insured "subjectively plan[s] the injury or subjectively foresee[s] the injury 'as practically certain.'" *Zelda, Inc. v. Northland Ins. Co.*, 56 Cal. App. 4th 1252, 1261 (1997). As the Court has already held, the Wellington Suit does not allege that Plaintiff intended *all* of the injuries Wellington sustained. Thus, this exclusion is only partially applicable.

Lastly, Defendant cites to California Insurance Code § 533 as a basis for excluding coverage. That provision states that an "insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal. Ins. Code § 533. "'[W]ilful act' as used in the statute means more than an intentional act done with ordinary or gross negligence—it connotes wrongfulness or misconduct." *Marie Y. v. Gen. Star Indem. Co.*, 110 Cal. App. 4th 928, 953

(2003) (quoting *J.C. Penny Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1020–21 (1991). But the Wellington Suit only alleges negligence, and the Court has already held that the Wellington Suit also alleges accidental damages—not wrongful conduct. Thus, § 533 does not exclude coverage.

        d.    <u>The Alienated Premises Endorsement Does Not Render the Exclusions Ambiguous</u>

The Court briefly addresses Plaintiff's argument that these three exclusions are ambiguous and should therefore not apply. *See Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 ("to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear'" (citation omitted)). These three Damage to Property exclusions in the original Policy were later replaced by a document titled Alienated Premises Endorsement ("APE"). The APE deleted the original exclusions, and replaced them with a new list of exclusions. The new list, however, was identical in nearly every respect (it only changed an exclusion regarding alienated premises), and the three exclusions at issue here were completely unchanged. Given that the relevant exclusions remained the same, the Court finds no ambiguity created by the APE.

**B. Defendant's Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment**

Defendant has moved for summary judgment on all of Plaintiff's claims. The Court has already granted summary judgment against Plaintiff on its first cause of action for defense costs. The Court addresses Plaintiff's remaining claims here.

1.    <u>Breach of the Duty to Indemnify for Settlement Costs of the Wellington Suit</u>

This cause of action seeks indemnification for the $350,000 settlement Plaintiff reached with Wellington. The Court has held that based on the allegations in the Wellington Suit, there is no potential for coverage under the Policy. Although there is no potential for

coverage, indemnification for a settlement turns not on potential for coverage, but on whether the actual settled claims are covered. *See Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 271–72 (1966).

Here, given that there is no potential for coverage, that discovery is closed, and that the parties have presented no relevant evidence outside of the allegations in the Wellington Suit, Defendant has met its burden of establishing the lack of a triable issue on its liability for indemnification. Plaintiff has not set forth any facts to prove that the actual facts—in contrast to the allegations—underlying the Wellington Suit would provide a basis for coverage. Therefore, the Court grants summary judgment in favor of Defendant on the second cause of action for indemnification.

2.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Given the Court's grant of summary judgment against Plaintiff on Plaintiff's breach of contract claims, the claim for breach of the implied covenant of good faith and fair dealing cannot survive. *Waller v. Truck Ins. Exch. Inc.*, 11 Cal. 4th 1, 36 (1995). The Court therefore grants summary judgment in favor of Defendant on the third cause of action for breach of the implied covenant of good faith and fair dealing.

3.    Declaratory Relief

Plaintiff also alleges two claims for declaratory relief regarding Plaintiff's right to coverage under the Policy. Given the Court's holding that there is no coverage for either defense costs or the settlement related to the Wellington Suit, the Court grants summary judgment in favor of Defendant on the fourth and fifth causes of action for declaratory relief.

**C.    Plaintiff's Waiver and Estoppel Arguments**

Lastly, the Court addresses Plaintiff's argument that Defendant has waived, or should be estopped from asserting, its denial of coverage. Plaintiff rests its argument on three grounds. First, Plaintiff claims that Defendant first agreed to pay defense costs then denied

its claim, thereby waiving its right to deny coverage.

Waiver always rests upon intent. *City of Ukiah v. Fones*, 64 Cal. 2d 104, 108 (1966). "Waiver is the *intentional* relinquishment of a known right after knowledge of the facts." *Waller*, 11. Cal. 4th at 31. The waiver may be express or implied. *Id.* The party claiming waiver must prove it by clear and convincing evidence, and "doubtful cases will be decided against a waiver." *Id.* (citing *Ukiah*, 64 Cal. 2d at 107–08). On a motion for summary judgment, the Court must evaluate the evidence through the prism of the clear and convincing standard. *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1044 (9th Cir. 2009).

The evidence does not establish a triable issue regarding waiver. Plaintiff cites to a letter dated August 31, 2005, which is from Susan Bryan, Plaintiff's representative, to Harold Dubbs, Defendant's representative. Ms. Bryan wrote, "You advised me this morning that it is your intent to accept the tender of defense of this matter subject to a reservation of rights." But in Mr. Dubbs' deposition, he testified that he did not agree with Ms. Bryan's characterization of their conversation. This letter, a self-serving characterization of a telephone conversation by Plaintiff's representative, would hardly constitute clear and convincing evidence at trial, especially given Mr. Dubbs' denial. Moreover, Ms. Bryan herself noted that Plaintiff was reserving its rights, which preserves Plaintiff's coverage defenses. *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 497–98 (2001).

Plaintiff also argues that Defendant's failure to deny coverage within forty days of a notice of claim, as required by California Code of Regulations title 10, § 2695.7(b), bars denial. Plaintiff cites no support for this proposition and the Court is unable to locate any.

Lastly, Plaintiff argues that Defendant is equitably estopped from denying coverage because Plaintiff detrimentally relied on Defendant's representation that it would pay defense costs. First, as discussed above, Plaintiff's claim that Defendant represented it would pay defense costs is dubious at best. Second, Plaintiff has not shown any detrimental reliance. Most importantly, however, the applicable case law squarely precludes Plaintiff's argument: "The rule is well established that the doctrines of implied waiver and of estoppel, based upon

the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or *risks expressly excluded therefrom.*"  *R & B Auto Center, Inc. v. Farmers Group, Inc.*, 140 Cal. App. 4th 327, 352 (2006) (emphasis added).

For these reasons, the Court holds that Defendant has not waived, and is not estopped from, denying Plaintiff's claim.

### IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Partial Motion for Summary Judgment [Doc. 30].  The Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 29] in its entirety.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  April 14, 2010

*[signature]*

Honorable Barry Ted Moskowitz
United States District Judge